Peter Frampton AKINDEMOWO,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZA-
TION SERVICE, Respondent.

No. 94–1544.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1995.

Decided Aug. 10, 1995.

**ARGUED:** Emmanuel Damascus Akpan, Baird & Akpan, Washington, DC, for petitioner. Francesco Isgro, Sr. Litigation Counsel, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent. **ON BRIEF:** Frank W. Hunger, Asst. Atty. Gen., Philemina McNeill Jones, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

Petition denied and deportation affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge LUTTIG and Judge WILLIAMS joined.

## OPINION

HAMILTON, Circuit Judge:

Appellant Peter Akindemowo (Akindemowo) was ordered deported pursuant to 8 U.S.C.A. § 1251(a)(2)(A)(ii) (West 1995) by an immigration judge (IJ), who concluded that Akindemowo committed two crimes of moral turpitude not arising out of a single scheme of criminal misconduct. The Board of Immigration Appeals (BIA) affirmed the order of deportation. Akindemowo appeals, contending that his crimes arose from a single scheme of criminal misconduct and thus he was improperly ordered deported under § 1251(a)(2)(A)(ii). Concluding that Akindemowo committed two separate crimes of moral turpitude not arising out of a single scheme of criminal misconduct, we deny his petition for review and affirm the order of deportation.

### I.

The material facts are not disputed. Akindemowo a/k/a Ali Hakim a/k/a John Abikwe is a native and citizen of Nigeria who entered the United States as an immigrant on October 6, 1986. In the Fall of 1987, Akindemowo planned to travel to Nigeria, and in connection with his proposed journey, he prepared a list of goods he intended to take with him: bracelets, cologne, a microwave oven, and a compact disc player. Akindemowo's ability to pay for these goods, however, did not equal his desire to obtain them; accordingly, he knowingly tendered fraudulent checks on a closed bank account bearing the name of one of his aliases and used these checks to acquire the goods.

On or about October 21, 1987, Akindemowo went to the Spottsylvania Shopping Mall to begin carrying out his criminal activity. First, he went to Nichols Department Store and tendered a fraudulent check on the closed bank account for a microwave oven and a compact disc player using the alias Ali Hakim. Second, Akindemowo entered Leggett's Department Store, and, again under the alias of Ali Hakim, he obtained a bottle of cologne by tendering a fraudulent check on the closed bank account. Finally, he ventured to Best Jewelry Store and attempted to purchase a gold bracelet and an onyx ring by tendering another fraudulent check on the closed account using the alias Ali Hakim. Akindemowo's check, however, failed to clear, and, while attempting to depart from Best Jewelry Store, he was arrested. Subsequently, Akindemowo was convicted of grand larceny by false pretenses for tendering a fraudulent check to Nichols Department Store, see Va.Code Ann. § 18.2–178 (Michie 1988), and of attempted grand larceny by false pretenses for attempting to tender another fraudulent check to Best Jewelry Store, see Va.Code Ann. §§ 18.2–26, 18.2–178 (Michie 1988). There is no explanation in the record with respect to any action taken against Akindemowo with respect to the cologne obtained from Leggett's Department Store. Akindemowo appealed unsuccessfully to the Court of Appeals of Virginia, which denied his petition for review.

Akindemowo's convictions precipitated the Immigration and Naturalization Service (INS) to issue a show cause order to Akindemowo, stating that he was subject to deportation under § 1251(a)(2)(A)(ii) as an alien who had been convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct. At his deportation hearing, Akindemowo admitted that he was convicted under Virginia law, committed grand larceny and attempted grand larceny, but denied deportability pursuant to

§ 1251(a)(2)(A)(ii), asserting that his convictions arose out of a single scheme of criminal misconduct. Explaining that Akindemowo tendered separate fraudulent checks to separate victims and that he had the opportunity to reflect upon and disassociate himself from each separate crime but failed to do so, the IJ concluded that Akindemowo's crimes did not arise out of a single scheme of criminal misconduct; accordingly, he ordered Akindemowo deported. Akindemowo appealed to the BIA, which affirmed the order of deportation.

Akindemowo petitions this court to review the judgment of the BIA. He does not challenge the conclusion that he committed the crimes, nor that the crimes constituted crimes of moral turpitude. Rather, Akindemowo asserts that his crimes arose out of a single scheme of criminal misconduct; accordingly, he contends that § 1251(a)(2)(A)(ii) does not apply, and hence he cannot be deported. Conversely, the INS posits that Akindemowo's crimes did not arise out of a single scheme of criminal misconduct, thereby triggering § 1251(a)(2)(A)(ii) and the resulting deportation.

## II.

### A.

■■■ Akindemowo was ordered deported pursuant to § 1251(a)(2)(A)(ii), which provides in pertinent part:

> Any alien ... in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:
>
> . . . .
>
> Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

The courts have recognized that neither § 1251(a)(2)(A)(ii) nor its legislative history sheds light on what constitutes a "single scheme of criminal misconduct" for purposes

of deporting aliens, thereby finding the statutory language ambiguous. *See, e.g., Thanh Huu Nguyen v. INS,* 991 F.2d 621, 623 (10th Cir.1993); *Pacheco v. INS,* 546 F.2d 448, 449 (1st Cir.1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977). The ambiguity springs from the fact that there is no differentiation between a "single scheme" and the fact that a "single scheme" may comprise any number of discrete acts extending over an indefinite period of time. *See id.* at 451. We are confronted, therefore, with an instance in which neither Congress nor the statute provides guidance to the court for resolution of the issue. If so confronted, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), directs us not to impose automatically our own interpretation of the statute, but rather to apply the interpretation of the administrative agency charged with implementing the statute, provided the agency's interpretation "is based on a permissible construction of the statute." The Court has adhered consistently to this precept, *see, e.g., Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696–97, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991); *Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 87, 95 S.Ct. 1470, 1485–86, 43 L.Ed.2d 731 (1975); *Udall v. Tallman,* 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965), explaining that agencies not only possess the expertise to implement statutes and implement them at Congressional directive, but also that agencies formulate their interpretations of statutory language based on policy considerations, which are manifested by the elected branches of our federal system, *see Pauley,* 501 U.S. at 681, 111 S.Ct. at 2526. As the *Chevron* Court elucidated, "federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do," *Chevron,* 467 U.S. at 866, 104 S.Ct. at 2793. Under *Chevron,* therefore, we accord considerable deference to the agency's interpretation of the statute, and "'we should not disturb [that interpretation] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned,'" *id.* at 845, 104 S.Ct.

at 2783 (quoting *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). Thus, if the agency's interpretation is "rational and consistent with the statute," *NLRB v. United Food & Commercial Workers Union, Local 23,* 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987), we defer to that interpretation. Deference to the agency's interpretation is particularly apropos here because the immigration laws "ha[ve] produced a complex and highly technical regulatory program" entailing policy determinations that fall within the ambit of agency expertise. *Pauley,* 501 U.S. at 697, 111 S.Ct. at 2534. On several instances, this court has applied *Chevron* to sustain the interpretation of an agency. *See, e.g. De Osorio v. United States INS,* 10 F.3d 1034, 1037–39 (4th Cir.1993) (holding that the BIA's interpretation of immigration laws was reasonable, and thus upheld, and under this interpretation, the aliens were properly deported); *Maryland Dep't of Human Resources v. United States Dep't of Agric.,* 976 F.2d 1462, 1469–1473 (4th Cir.1992) (reversing the district court for substituting its interpretation of the energy assistance provisions of the Food Stamp Act and sustaining the interpretation of the Department of Agriculture); *Lee v. Consolidation Coal Co.,* 843 F.2d 159, 162 (4th Cir.1988) (upholding the interpretation of the Director of Workers' Compensation in construing Black Lung Act and noting that because the Director's interpretation was reasonable, it could not be overturned by the court of appeals); *Monger v. Bowen,* 817 F.2d 15, 17–18 (4th Cir.1987) (ruling that the Secretary of Health and Human Services' interpretation of the Social Security Act was reasonable, if not the exclusive interpretation, and thus reversing the district court for failing to follow the Secretary's interpretation); *Chiravacharadhikul v. INS,* 645 F.2d 248, 251 (4th Cir.) (deferring to the BIA's interpretation of the immigration laws and under this interpretation, affirming that the alien was properly deported), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). Fidelity to precedent, therefore, compels us to apply the INS' interpretation of § 1251(a)(2)(A)(ii) provided it is reasonable.

## B.

The INS, the agency charged with implementing deportation, has interpreted the challenged language:

> To us, the natural and reasonable meaning of the statutory phrase is that when an alien has performed an act which, in and of itself, constitutes a complete, individual and distinct crime then he becomes deportable when he again commits such an act, provided he is convicted of both. *The fact that one may follow the other closely, even immediately, in point of time is of no moment. Equally immaterial is the fact that they may be similar in character, or that each distinct and separate crime is a part of an overall plan of criminal misconduct.*

*In re D____,* 5 I & N Dec. 728, 729 (BIA 1954) (emphasis added). Indeed, in *In re D____,* the BIA opined that if an alien were to break and enter a store to commit larceny, that would be a single crime, but if "after breaking and entering and committing larceny in one store, the [alien] did the same thing in the adjoining store[,]" that would constitute multiple crimes thereby triggering deportation pursuant to § 1251(a)(2)(A)(ii). *Id.* at 30. For approximately forty years, the BIA unfailingly has followed this interpretation. For instance, in *In re Adetiba,* A–29571508 Inter.Dec. (BIA) 3177, 1992 WL 195812 (BIA 1992), the BIA reaffirmed its adherence to *In re D____:*

> When an alien performs an act that in and of itself constitutes a complete, individual, and distinct crime, he is deportable when he again commits such an act, even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct.

> ....

> [T]he statutory exception refers to acts, which although separate crimes in and of themselves, were performed in furtherance of a single criminal episode, such as where one crime constitutes a lesser offense of another or where two crimes flow from and

are the natural consequence of a single act of criminal misconduct.

*Id.* at \*5–\*6.

■ Our standard of review of an order of deportation pursuant to § 1251(a)(2)(A)(ii) entails determining whether the INS' interpretation of the statute is reasonable under *Chevron,* and if so, whether there is substantial evidence to determine whether the INS' application of its interpretation has been satisfied. *See Animashaun v. INS,* 990 F.2d 234, 237 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 557, 126 L.Ed.2d 458 (1993). Our review, therefore, has two prongs: the legal interpretation of the statute and the factual predicate on which application of interpretation is based. "Substantial evidence" under this standard of review "requires only that the [BIA's] conclusion be based upon the evidence presented and that it be substantially reasonable," *id.see also Zaitona v. INS,* 9 F.3d 432, 434 (6th Cir.1993) (using this two-pronged standard of review, *i.e.,* analyzing the agency's interpretation under *Chevron* and then examining the record for substantial evidence to support the decision).

The circuits are split regarding the applicability of the INS' standard for defining single scheme of criminal misconduct articulated in *In re D____* and *In re Abetiba.* The First, Fifth, Sixth, and Tenth Circuits—all relying on *Chevron* to conclude that the INS' interpretation of § 1251(a)(2)(A)(ii) is reasonable and hence must be sustained—have followed the INS' interpretation as articulated in *In re D____* and *In re Abetiba. See respectively Balogun v. INS,* 31 F.3d 8, 9 (1st Cir.1994) *(per curiam ); Iredia v. INS,* 981 F.2d 847, 849 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 203, 126 L.Ed.2d 160 (1993); *Zaitona,* 9 F.3d at 437–38; *Thanh Huu Nguyen,* 991 F.2d at 623. According to these circuits, because the INS' interpretation is reasonable and consonant with Congressional intent, it controls. Conversely, the Second, Third, and Ninth Circuits use a much more expansive definition. *See respectively Nason v. INS,* 394 F.2d 223 (2d Cir.),

*cert. denied,* 393 U.S. 830, 89 S.Ct. 98, 21 L.Ed.2d 101 (1968); *Sawkow v. INS,* 314 F.2d 34 (3d Cir.1963); \* *Wood v. Hoy,* 266 F.2d 825 (9th Cir.1959). According to these circuits, determination of whether two criminal acts arise out of a single scheme turns on whether "the two predicate crimes were planned at the same time and executed in accordance with that plan, [and if so], ... that the government has failed in its burden to establish that the conviction did not arise out of 'a single scheme of criminal misconduct'" for purposes of § 1251(a)(2)(A)(ii), *see Gonzalez–Sandoval v. United States INS,* 910 F.2d 614, 616 (9th Cir.1990). Despite its cognizance of the fact that the Second, Third, and Ninth Circuits do not follow its interpretation of § 1251(a)(2)(A)(ii), the INS continues to follow *In re D____* and *In re Adetiba,* in all save those circuits. *See In re Adetiba,* 1992 WL 195812 at \*5–\*6 (noting that the Ninth Circuit follows a different interpretation, criticizing the Ninth Circuit's interpretation, but recognizing that the INS is bound to follow Ninth Circuit precedent within the Ninth Circuit's jurisdiction). Like the INS, other circuits have criticized the view of the Second, Third, and Ninth Circuits, explaining that this interpretation not only fails to comport with *Chevron,* but is also unduly expansive. *See, e.g., Balogun,* 31 F.3d at 9; *Zaitona,* 9 F.3d at 436; *Iredia,* 981 F.2d at 849.

### C.

■ Having examined the precedents and being governed by *Chevron,* we embrace the growing, majority view of the First, Fifth, Sixth, and Tenth Circuits and conclude that the INS' interpretation of § 1251(a)(2)(A)(ii) is reasonable and thus must be followed. Various considerations compel us to this conclusion. First, if the statutory language is ambiguous, *Chevron* requires that we follow the implementing agency's interpretation of a statute if that interpretation is reasonable, and here, the INS' interpretation is eminently reasonable, even if not compelled; this conclusion being deduced, further review is

---

\* We observe that *Nason* and *Sawkow* were decided prior to *Chevron, U.S.A., Inc.,* and neither the Second nor the Third Circuit has cited *Nason* nor *Sawkow* respectively in a post-*Chevron, U.S.A.,* *Inc.* decision. Thus, only the Ninth Circuit, post-*Chevron, U.S.A., Inc.,* has followed its own interpretation, rather than that of the INS.

foreclosed. Second, the Second, Third, and Ninth Circuit's interpretation is at loggerheads with *Chevron* because those courts substitute the reasonable interpretation of the INS with their own interpretation. Third, we find the interpretation of the Second, Third, and Ninth Circuits results in incongruence because it renders § 1251(a)(2)(A)(ii) inapplicable to cases in which an alien committed several crimes over an extended period of time, provided that he first had the foresight to formulate a broad plan of criminal misconduct, even if he had numerous opportunities to reflect and to disassociate himself from his criminal enterprise. Under such interpretation, aliens who are far more culpable in that they plan multiple crimes may engage in criminal activity without the added risk of deportation.

▮ Applying this standard adopted by the majority of our sister circuits, we deny the petition and affirm the order of deportation. Here, Akindemowo's crimes did not arise out of a single scheme of criminal misconduct. First, Akindemowo was convicted of two separate offenses against different victims: the first crime was for grand larceny by false pretenses; and the second crime was for attempted grand larceny by false pretenses. *See Balogun*, 31 F.3d at 9 (opining that separate crimes tended to establish that the crimes did not arise from a single scheme of criminal misconduct); *Thanh Huu Nguyen*, 991 F.2d at 625 (examining the separate nature of the different offenses of which the alien was convicted). That these offenses are similar does not alter the fact that they did not spring from a single scheme of criminal misconduct. *See Balogun*, 31 F.3d at 8–9 (alien convicted of conspiracy to commit mail fraud and three counts of mail fraud was properly deported under § 1251(a)(2)(A)(ii)); *Iredia*, 981 F.2d at 848–49 (alien convicted of thirteen counts of credit card fraud using a single *modus operandi* was properly ordered deported because his crimes did not spring from a single scheme of criminal misconduct). Indeed, in *Animashaun*, the Fifth Circuit held that an alien was properly deported pursuant to § 1251(a)(2)(A)(ii) because he was convicted of two separate counts of forgery under Georgia law. *Animashaun*, 990 F.2d at 238. According to the *Animashaun* court, the two forgery convictions did not arise out of a single scheme of criminal misconduct, regardless of "the fact that the crimes were similar in nature, closely followed one another in time, and may have been part of an overall plan of criminal misconduct," *id.* Second, there were separate victims, Nichols Department Store and Best Jewelry Store. *See Balogun*, 31 F.3d at 9 (considering that different victims tended to establish that crimes did not arise out of a single scheme of criminal misconduct); *Thanh Huu Nguyen*, 991 F.2d at 625 (noting that there were separate victims to the separate crimes). Third, as the IJ explained, and as we agree, Akindemowo had the opportunity to reflect upon one crime before committing the other, yet he elected not to disassociate himself from his criminal misconduct. *See Pacheco*, 546 F.2d at 451 (explaining that "single scheme" entails an alien's opportunity to disassociate himself from criminal activity). Fourth, while Akindemowo's crimes occurred at the same shopping mall within a short timeframe, Akindemowo tendered two separate checks, and the two separate instances were removed in time. The record establishes that substantial evidence supports the BIA's decision to deport Akindemowo. We agree with the IJ and the BIA that Akindemowo's crimes did not arise out of a single scheme of criminal misconduct. Accordingly, we deny his petition and affirm the order of deportation.

### III.

Concluding that the INS' interpretation of § 1251(a)(2)(A)(ii) as articulated in *In re D____* and adopted and applied by the First, Fifth, Sixth, and Tenth Circuits is reasonable and consistent with Congressional intent under *Chevron*, we are compelled to adopt it as the law of the Fourth Circuit. Applying this interpretation, we conclude that Akindemowo's criminal activity did not arise out of a single scheme of criminal misconduct. We, therefore, deny his petition for review and affirm the order of deportation.

*PETITION DENIED AND DEPORTATION AFFIRMED.*