**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PAUL A. BLACKBURN,
<u>Petitioner,</u>

v.

ROBERT B. REICH, SECRETARY OF
LABOR; METRIC CONSTRUCTORS,
INCORPORATED,
<u>Respondents.</u>

No. 95-1166

On Petition for Review of an Order
of the United States Department of Labor.
(86-ERA-4)

Argued: October 31, 1995

Decided: March 26, 1996

Before HALL and WILLIAMS, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Judge Hall wrote the
majority opinion, in which Senior Judge Butzner joined. Judge Wil-
liams wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** William Reynolds Williams, WILLCOX, MCLEOD,
BUYCK & WILLIAMS, P.A., Florence, South Carolina, for Peti-
tioner. Paul Frieden, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Thom-

as S. Williamson, Jr., Solicitor of Labor, Gail V. Coleman, Deputy Associate Solicitor, William J. Stone, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Secretary.

_____

**OPINION**

HALL, Circuit Judge:

Paul A. Blackburn seeks review of the Secretary of Labor's final decision that denied attorney's fees for the prosecution of a prior appeal to this court. We vacate the Secretary's decision and remand for reconsideration of Blackburn's fee petition.

I

Metric Constructors, Inc., was an independent contractor that performed construction work at a nuclear power plant in South Carolina. Blackburn, an electrician with Metric, was fired on September 5, 1984, for his refusal to work at the plant unless protective lead shielding was put in place at the worksite. He filed a complaint against Metric with the Secretary of Labor under the employee protection provisions of the Energy Reorganization Act (ERA), 42 U.S.C. § 5851 (1988)[1]. After finding a violation and ordering Metric to reinstate Blackburn, the Secretary remanded the case to an administrative law judge (ALJ) for a determination of back pay, compensatory damages, and attorney's fees.

The ALJ recommended an award of back pay covering the period of September 5, 1984, through December 31, 1987, compensatory damages of $10,000 for emotional distress and mental anguish, and attorney's fees and costs. Both parties filed exceptions to the recom-

_____

[1] The statute was amended extensively in 1992, although the portions of the statute that are relevant to this appeal, subsections (b)(2)(B) through (g), remained unchanged. See Pub. L. 102-486, Title XXIX, § 2902(a)-(g), (h)(2), (3). We are dealing with the pre-amendment version here.

mendations. In a decision issued October 30, 1991, the Secretary determined that back pay could not be awarded for the period after December 31, 1984, when Metric lost the contract for work at the nuclear plant. With regard to compensatory damages, the Secretary viewed Blackburn's claim as being based on the stress resulting from "diminished financial situation brought about because of his inability to find a job following his termination from Metric." Finding that Blackburn had not suffered any financial loss as a result of his termination, the Secretary ruled that an award for emotional distress was inappropriate. Blackburn sought review in this court.[2] 42 U.S.C. § 5851(c)(1).

We affirmed the decision with regard to the back pay award. We held, however, that injuries, such as loss of self esteem arising from the termination itself, could justify an award of compensatory damages despite the absence of adverse financial consequences. Accordingly, we remanded to the Secretary for a redetermination of compensatory damages. Blackburn v. Martin, 982 F.2d 125 (4th Cir. 1992) (Blackburn I).

On August 16, 1993, the Secretary ordered Metric to pay $5,000 in compensatory damages. Two weeks later, Blackburn filed a petition for costs and attorney's fees covering the period from November 15, 1991, through August 27, 1993. On December 27, 1994, the Secretary awarded attorney's fees and costs for Blackburn's lawyers' efforts after the remand in Blackburn I, but he denied all fees and costs incurred in relation "to preparing and conducting the appeal" to this court. The denial was expressly based on the Secretary's view that he does not have the statutory authority to award fees for work performed before an appellate court. Blackburn now appeals this fee ruling.

II

42 U.S.C. § 5851(b)(2)(B) provides that, if an order is entered granting relief to a person who has suffered discrimination in violation of the ERA, the Secretary

_____

[2] Blackburn did not seek review of the Secretary's decision with regard to attorney's fees and costs.

shall assess against the person against whom the order is issued a sum equal to the aggregate of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary, by the complainant for, or in connection with, the bringing of the complaint upon which the order was issued.

The Secretary's ruling was expressly based on the majority opinion in DeFord v. Secretary of Labor, 715 F.2d 231 (6th Cir. 1983), which, the Secretary reasoned, "squarely held that neither the court nor the Secretary is authorized under the ERA to award costs, including attorney's fees, for proceedings on appeal to the court of appeals." As a matter of statutory interpretation, our review is de novo.**3**

_____

**3** Although the Secretary now contends that we should give deference to his interpretation of the statute under the rule announced in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the decision to deny appellate fees was apparently based not on his interpretation of the statute but, rather, on his belief that he was required to follow the holding in DeFord. The order on appeal reads in relevant part:

> Based on Deford, I disallow the entries[in the fee petition] that relate to preparing for and conducting the appeal. Contrary to Complainant's arguments, the court in DeFord squarely held that neither the court nor the Secretary is authorized under the ERA to award costs, including attorney's fees, for proceedings on appeal to the court of appeals.[ ] The Secretary has applied this holding in other cases arising under analogous statutes. See Spinner v. Yellow Freight Sys., Inc. . . . On the other hand, contrary to Respondent's position, DeFord does not foreclose an award of fees incurred by a complainant in proceedings before the Secretary on remand.

(Spinner, which does contain a cf. citation to DeFord, did not involve attorney's fees for appellate work, and the holding in DeFord was in no way "applied".) Deford, which predated Chevron, does not mention, much less give deference to, whatever the Secretary's view of the statute was in 1984. Because the Secretary based his decision in the instant case on judicial precedent rather than his own interpretation of the statute, we owe "no more deference than we would any lower court's analysis of the law." Thomas Hodgson & Sons, Inc. v. F.E.R.C. , 49 F.3d 822, 826 (1st Cir. 1995).

4

A

Although the DeFord majority's analysis is not entirely clear, we understand it to proceed as follows: Section 5851(b)(2)(B) allows the Secretary to award attorney's fees as part of "costs and expenses", and the court of appeals clearly should award "costs" to the party prevailing on appeal (presumably under Fed. R. App. p. 39); therefore, the Secretary and the court have mutually exclusive authority to award "costs" for the portions of the case at the different levels, and the Secretary's cost-awarding authority (which includes his fee-awarding authority) is limited to the administrative sphere"as a jurisdictional or quasi-jurisdictional matter." Id. at 232. The DeFord majority also noted that, while the "costs and expenses" under § 5851 had to be "for, or in connection with, the bringing of the complaint" against the employer, the appeal in that case involved a "distinguishable cause-- complaints against the Secretary arising out of dissatisfaction with his order." Id. at 233. Neither prong of this rationale withstands scrutiny.

In this circuit, "[t]he only costs generally taxable in the court of appeals are: (1) the docketing fee if the case is reversed; and (2) the cost of printing or reproducing briefs and appendices, including exhibits." Internal Operating Procedures (IOP) 39.1. Other costs associated with an appeal, such as the fee for preparing the record, are taxable in the district court. Fed. R. App. P. 39(e); IOP 39.1. Thus, in the usual case, two levels--the district court and the court of appeals --are satisfying the entitlement to "costs" incident to the appeal. There is, in short, no impenetrable barrier between the various levels of the court system as far as costs are concerned, and, as a general matter, we see no problem whatsoever with permitting the Secretary to award appeal-related "costs" when the appeal is from an agency to the court of appeals.**4**

The other basis for the holding in DeFord is that the appeal involved a dispute with the Secretary rather than the respondent-employer and, therefore, on appeal the complainant"did not incur any attorneys' fees or other costs for litigation of claims arising from the complaint . . . ." Id. at 233. Every appeal arises from dissatisfaction

_____

**4** In Blackburn I, neither party filed a bill of costs with the clerk of the court of appeals.

with the order appealed from, and, in that sense, every appeal involves a dispute with the decisionmaker. But it was Metric's successful litigation position at the administrative level that necessitated Blackburn's first appeal, and, as we explain below, the legal fees incurred in pursuing that appeal were every bit as"in connection with" his claim as were the fees for the administrative efforts.[5]

B

The Secretary raises some additional arguments not addressed in DeFord, one of which looks to the arrangement of the subsections in § 5851 for support. Section 5851(b) authorizes the Secretary to enter remedial orders that may include reinstatement, back pay, and compensatory damages. The next three subsections relate directly to any such orders: Subsection (c) provides for review of the Secretary's order in the court of appeals, subsection (d) gives the Secretary the right to file a separate action in district court to enforce its order, and subsection (e) gives the individual complainant the right to file a separate enforcement action in district court. Only subsections (b) and (e), however, contain specific provisions for attorney's fees, and the Secretary argues that the absence of a similarly specific provision in (c) evinces Congressional intent to limit his authority to award fees to the administrative proceedings alone. To whatever degree this arrangement tilts in favor of the Secretary's position, it is far from enough to overcome other, brighter indicators of Congressional intent.[6]

_____

[5] As far as attorney's fees are concerned, the situation would be precisely the same had Blackburn I involved an appeal by Metric from, say, the Secretary's decision awarding four months' back pay. Blackburn would have had to defend the award, yet, under the Secretary's reasoning, he would have been unable to recoup attorney's fees expended to uphold the award.

[6] It should be obvious that it is necessary to have at least the two fee provisions that are in the statute. Because the enforcement action is a separate action that is initiated in the district court and which never comes before the Secretary, a separate authorization to award fees, directed to the district court rather than the Secretary, was necessary in (e).

6

At the core of much of the Secretary's argument is the premise that "[t]he bringing of a complaint under the whistleblower provision of the ERA is a completely separate action from filing a petition for review under that provision." Respondent's brief at 12. Were this actually the case, we might be persuaded that the Secretary is pre-cluded from awarding appellate fees. But an appeal is simply one step in the overall adjudicatory scheme, not a "separate action." See DeFord, 715 F.2d at 233 ("[R]eview in the Court of Appeals is not a new action . . . . [I]t is simply a continuation of the action before the Secretary.") (Merritt, J., dissenting). A semantically and logically more defensible interpretation of the phrase "in connection with the bringing of the complaint" is "in connection with the claim"; very simply, all litigation-related efforts should be compensable.

C

The overarching purpose of the statute--the protection of whistleblowers--militates against an interpretation that would make anti-retaliation actions more difficult to maintain. In Local 17, Internat'l Ass'n of Heat and Frost Insulators v. Young, 775 F.2d 871 (7th Cir. 1986), the court of appeals affirmed an award of attorney's fees to plaintiffs for successfully resisting the defendants' petition for certiorari to the Supreme Court, despite the absence of any specific statutory language giving the lower court the authority to award fees for appellate work. In finding that Congress intended that the lower court have such authority, the appeals court emphasized the overall purpose of the statutory scheme at issue:

> If disgruntled union members, as prevailing plaintiffs, were forced to incur costs for unsuccessful, fruitless Union appeals, this would have a chilling effect on union mem-bers' ability to afford challenging the union leadership. Situ-ations would develop where union officials could willfully violate the law, yet recognize an inability on the part of their membership to challenge the Local hierarchy in court due to a lack of funds. . . . [D]ue to the uneven bargaining positions of the parties, the purpose of the LMRDA would be frus-trated.

7

Id. at 873. The same rationale should apply with equal or greater vigor in the realm of nuclear safety.**7**

D

The Secretary's final argument is a variation on the others: "When Congress wants to award attorney's fees and costs for judicial review, it knows how to do so." Respondent's brief at 16. The Secretary has not pointed us to any statutory scheme wherein attorney's fees are recoverable for some, but less than all, the litigation expenses in a single action. Quite the opposite appears to be the general rule; if fees are authorized at all, they are recoverable for all phases of the litigation, and, moreover, appellate fees can be awarded by a lower court. See, e.g., Goodwin v. Metts, 973 F.2d 378, 384-85 (4th Cir. 1992) (per curiam) (reviewing appellate fees awarded under 42 U.S.C. § 1988 by the district court); McManama v. Lukhard, 616 F.2d 727, 730 (4th Cir. 1980) (per curiam) (remanding to the district court "for assessment of additional attorneys' fees . . . to compensate the plaintiffs for the expense of their successful defense of [defendant's] appeal").

The authorities cited by the Secretary do not hold otherwise. In both Roosevelt Campobello International Park Commission v. U.S.E.P.A., 711 F.2d 431 (1st Cir. 1983), and Key Tronic Corp. v. United States, 114 S. Ct. 1960 (1994), the issue was whether attorney's fees could be awarded at all for a distinct type of action.**8** Neither of these cases holds that attorney's fees may be recoverable for work related to only one of the various levels of a given contested case.

_____

**7** Blackburn's lawyers claimed some $10,000 in fees for the appeal in Blackburn I. The prospect of an unrecoverable expenditure of this magnitude, particularly when balanced against the level of recovery involved in this case, illustrates how the threat of an appeal could well diminish a complainant's chances of achieving full relief under the statute.

**8** In Roosevelt Campobello, the issue was whether fees could be awarded to persons who initiated a petition for review in the court of appeals under 42 U.S.C. § 1369(b). In Key Tronic, the issue was whether litigation-related attorney's fees expended in a contribution action could be deemed a recoverable "necessary cost of response" under § 107(a)(4)(B) of CERCLA.

8

III

We hold that attorney's fees related to prosecuting an appeal before the court of appeals are "costs . . . incurred . . . in connection with [ ] the bringing of [a] complaint" under § 5851(b), and, therefore, the Secretary has the authority to award such fees. We vacate the Secretary's final decision and remand with instructions to reconsider Blackburn's third fee petition in light of the foregoing opinion.

VACATED AND REMANDED

WILLIAMS, Circuit Judge, dissenting:

I respectfully dissent. The majority concludes that the Secretary has the authority to award attorneys' fees and expenses incurred in an appeal because the costs of the appeal were incurred "in connection with" the bringing of a complaint under the Energy Reorganization Act (ERA). See 42 U.S.C.A. § 5851(b)(2)(B) (West 1995). In reaching its conclusion, the majority improperly applies a de novo standard of review to the Secretary's interpretation of § 5851(b)(2)(B), when in fact we should apply the test enunciated by the Supreme Court in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). Under Chevron, I conclude that the Secretary's interpretation is a permissible construction of a statutory provision whose meaning is clarified by neither the statutory language nor the legislative history. Additionally, disregarding the majority's incorrect standard of review, I believe that the majority's conclusion is supported by flawed reasoning.

I.

The majority departs from controlling Supreme Court and Fourth Circuit precedent, and incorrectly conducts a plenary review of the Secretary's interpretation of the statute. See majority op. at 4 ("As a matter of statutory interpretation, our review is de novo."). Although de novo review is appropriate when reviewing the construction of a statute by an Article I or III court, see, e.g. , United States v. Hall, 972 F.2d 67, 69 (4th Cir. 1992), the Supreme Court in Chevron has directed a different standard for review of an administrative agency's

9

interpretation of a statute or regulation, see Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 932-33 (11th Cir. 1995) (applying the Chevron analysis to the Secretary's interpretation of a provision under the ERA because of the Supreme Court's recognition of the Secretary's expertise in employee protection).**1** Under Chevron, we

_____

**1** The majority contends that deference under Chevron is inappropriate under the reasoning of Thomas Hodgson & Sons, Inc. v. FERC, 49 F.3d 822 (1st Cir. 1995), "[b]ecause the Secretary based his decision . . . on judicial precedent rather than his own interpretation of the statute." Majority op. at 4 n.3. Basically, the majority asserts that the Secretary reached his decision based "on his belief that he was required to follow the holding in Deford," majority op. at 4 n.3, rather than by applying his expertise in employee protection and choosing to adopt the construction of the Sixth Circuit. I cannot agree with the majority's assertion that the Secretary believed he was bound by DeFord; therefore, I conclude that deference to the Secretary is required under Chevron.

The reasoning behind the majority's justification for not applying Chevron contains a number of fatal flaws. First, the language the major- ity employs in defending its application of a de novo standard is quite equivocal: The majority asserts that the Secretary's"decision to deny appellate fees was apparently based . . . on his belief that he was required to follow the holding in DeFord." Majority op. at 4 n.3 (emphasis added). By using such ambivalent terms, the majority implicitly con- cedes that its conclusions are weakly supported. Second, the majority bases its conclusion that the Secretary believed he was bound by DeFord on what it labels as the "relevant" portion of the Secretary's order, major- ity op. at 4 n.3; however, in focusing on a four-sentence excerpt from the order, the majority contravenes the rule of construction that documents should be construed in their entirety, see Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1332-33 (4th Cir. 1995) (construing a contract), petition for cert. filed, 64 U.S.L.W. 3593 (U.S. Feb. 23, 1996) (No. 95- 1353); Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1523 (9th Cir. 1983) (interpreting a district court's injunction in the context of its entire order), cert. denied , 465 U.S. 1081 (1984), and ignores other clear indications in the order that the Secretary knew he was not compelled to follow DeFord, see  discussion infra. Third, it is beyond dispute that an agency is not bound by circuit precedent except in controversies that arise within the jurisdiction of that circuit. See, e.g., Akindemowo v. INS, 61 F.3d 282, 286 (4th Cir. 1995); see also Hodgson, 49 F.3d at 830 (Cyr, J., concurring) (pointing out that decisions from the Fourth and Ninth Circuits do not bind an agency adjudicating a

10

first determine if Congress has "provide[d] guidance to the court for resolution of the issue" through the statutory language or the

_____

controversy that arose in the First Circuit). I find it simply absurd to posit, as the majority does, that the Secretary was unaware of this elementary principle and believed he was bound by Sixth Circuit precedent when deciding a controversy that arose in the Fourth Circuit. See Bechtel, 50 F.3d at 931-32 (illustrating that the Secretary continued to apply his own statutory interpretation of provisions of the ERA in circuits that have no binding precedent despite the fact that another circuit disagreed with the Secretary's construction); see also Akindemowo, 61 F.3d at 286 (observing that the Board of Immigration Appeals continued to apply its interpretation of a deportation statute in all circuits except those that had rejected the Board's interpretation). Finally, the majority seeks to minimize the importance of DeFord by noting that it was decided before Chevron. This argument ignores the fact that Chevron did not announce a "new rule"; indeed, prior to Chevron, the Supreme Court had consistently adhered to the principle that courts should defer to the reasonable interpretations of administrative agencies rather than substituting their own judgment. See, e.g., Train v. Natural Resources Defense Council, 421 U.S. 60, 87 (1975); Udall v. Tallman, 380 U.S. 1, 16-18 (1965). Thus, I find the majority's assertion that the Secretary believed he was bound by DeFord to be unsupported and the reasoning behind the majority's decision to apply a de novo standard of review to be unsound.

To the contrary, because the Secretary exercised his discretion in choosing to adopt the reasoning of the Sixth Circuit in DeFord, we must apply the deference mandated by Chevron. The language of the Secretary's order persuades me that the Secretary did not believe that DeFord controlled his decision. In his order, the Secretary not only clearly embraced the interpretation of § 5851(b)(2)(B) adopted by the Sixth Circuit, but also implicitly acknowledged his authority to reject that interpretation. The order begins by casting the dispute in adversarial terms: He notes that Metric relies on DeFord in requesting the Secretary to deny Blackburn's petition for fees incurred on appeal and observes that Blackburn "urges the Secretary not to follow DeFord." (J.A. at 39.) The Secretary then holds that he is denying the petition"[b]ased on DeFord," (J.A. at 40,) and "reject[s Blackburn]'s argument that the court's reasoning in DeFord is flawed" based on the Secretary's own interpretation of § 5851(b)(2)(B) (J.A. at 40 n.1.). The Secretary concludes by expressing approval of the holding in DeFord by remarking that he "has applied [it] in other cases arising under analogous statutes." (J.A. at 40.)

11

appropriate legislative history. <u>Akindemowo v. INS</u>, 61 F.3d 282, 284 (4th Cir. 1995). If so, our inquiry is complete and we proceed no further. <u>Chevron</u>, 467 U.S. at 842-43. If, however, we are unable to discern "the unambiguously expressed intent of Congress," <u>id.</u> at 843, then <u>Chevron</u> "directs us not to impose automatically our own interpretation of the statute, but rather to apply the interpretation of the administrative agency charged with implementing the statute, provided the agency's interpretation `is based on a permissible construction of the statute.'" <u>Akindemowo</u>, 61 F.3d at 284 (quoting <u>Chevron</u>, 467 U.S. at 843). Employing the <u>Chevron</u> analysis, I conclude that the intent of Congress is unclear regarding the award of attorneys' fees for the prosecution of an appeal under the ERA and that the Secretary's interpretation of § 5851(b)(2)(B) is permissible.

A.

Under the first prong of <u>Chevron</u>, I conclude that neither the statutory language nor the legislative history provides adequate guidance to determine the intent of Congress with respect to whether the Secretary has the authority to award attorneys' fees and expenses incurred in a successful appeal under the ERA. Section 5851(b)(2)(B) provides that a plaintiff entitled to relief under the ERA may recover "all costs and expenses (including attorneys' and expert witness fees) reasonably incurred . . . for, or <u>in connection with</u> , the bringing of the complaint." 42 U.S.C.A. § 5851(b)(2)(B) (emphasis added). I find the statutory language to be ambiguous because the statute does not plainly state whether attorneys' fees incurred in an appeal are incurred "in connection with" the bringing of the complaint. <u>See DeFord v.</u>

_____

I cannot divine from the order that the Secretary believed he was compelled to follow <u>DeFord</u>. The Secretary never stated that he was bound by <u>DeFord</u>, nor does he hold that the controversy was controlled by <u>DeFord</u>. Indeed, the Secretary's rejection of Blackburn's arguments for reasons other than stare decisis and the Secretary's expression of approval of the holding in <u>DeFord</u> suggest the opposite: The Secretary chose to follow <u>DeFord</u> because of its persuasive reasoning. Therefore, because the Secretary, applying his expertise, exercised his discretion in adopting the Sixth Circuit's interpretation of § 5851(b)(2)(B), deference under <u>Chevron</u> is required.

12

Secretary of Labor, 715 F.2d 231, 232 (6th Cir. 1983) ("[The statute] does not by clear language confer authority upon the Secretary to award fees for appellate proceedings.").

Because the meaning of the phrase "in connection with" is not clear from the statutory language, we are required to look beyond the plain language of the statute to the appropriate legislative history for guidance. Robinson v. Shell Oil Co., 70 F.3d 325, 329 (4th Cir. 1995) (en banc). In searching the legislative history, we must confine ourselves to a review of the official Committee Reports on the bill, the "authoritative source for finding the Legislature's intent." Garcia v. United States, 469 U.S. 70, 76 (1984). I agree with the DeFord court that the legislative history is silent on whether attorneys' fees and expenses incurred for an appeal are recoverable. See DeFord, 715 F.2d at 233. Thus, I am unable to discern the "unambiguously expressed intent of Congress" through either the statutory language or the legislative history.**2** Chevron, 467 U.S. at 843.

B.

Having found the search for clear congressional intent to be unavailing, I proceed to the second prong of Chevron: Whether the Secretary's interpretation of the provision is permissible. See Akindemowo, 61 F.3d at 284 (proceeding to a determination of whether an agency's construction of a statute was permissible after

_____

**2** Although the majority bases its decision on its belief that the award of attorneys' fees incurred in successful appeals under the ERA is consonant with the intent of Congress, see majority op. at 7-8; see also discussion infra part II, I submit that the majority's analogy to Local 17, International Association of Heat & Frost Insulators & Asbestos Workers v. Young, 775 F.2d 870 (7th Cir. 1985), is insufficient to prove congressional intent. Under Chevron, we may avoid the second prong of the analysis only if we are able to divine the "unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843. By citing a case applying a different standard of review to a statute dealing with different subject matter, the majority has failed to demonstrate the statutory clarity required under Chevron. See Russello v. United States, 464 U.S. 16, 25 (1983) ("Language in one statute usually sheds little light upon the meaning of different language in another statute . . . ."); see also United States v. Mitchell, 39 F.3d 465, 470 n.7 (4th Cir. 1994) (same).

13

finding that neither the statutory language nor the legislative history indicated the intent of Congress). Under the second prong of the Chevron analysis, we may not "simply impose[our] own construction on the statute, as would be necessary in the absence of an administrative interpretation." Chevron, 467 U.S. at 843 (footnote omitted); accord Akindemowo, 61 F.3d at 284. Rather, we must apply the agency's interpretation of the statute if it "give[s] reasonable content to the statute's textual ambiguities." See Department of Treasury, IRS v. FLRA, 494 U.S. 922, 933 (1990).

In determining whether the agency's interpretation is reasonable, we need not "conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n.11. Instead, we should "accord considerable deference to the agency's interpretation of the statute, and `we should not disturb [that interpretation] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'" Akindemowo, 61 F.3d at 284 (quoting Chevron , 467 U.S. at 845); see also Good Samaritan Hosp. v. Shalala, 113 S. Ct. 2151, 2159 (1993) ("Confronted with an ambiguous statutory provision, we generally will defer to a permissible interpretation espoused by the agency entrusted with its implementation."). This deference is appropriate because "agencies not only possess the expertise to implement statutes and implement them at Congressional directive, but also [they] formulate their interpretations of statutory language based on policy considerations, which are manifested by the elected branches of our federal system." Akindemowo, 61 F.3d at 284. In effect, "federal judges--who have no constituency--have a duty to respect legitimate policy choices made by those who do." Chevron , 467 U.S. at 866.

Under the second prong of the Chevron analysis, I conclude that the interpretation advanced by the Secretary is a permissible construction of the statute, even if it is one with which reasonable jurists might disagree. Various reasons compel this conclusion: the Secretary's construction accords with the "American Rule" regarding allocation of costs; the structure of the statute suggests that attorneys' fees incurred in an appeal are not recoverable; and an appeal from an unfa-

14

vorable ruling by the Secretary is an action separate from the initial complaint lodged against the employer.

Under the American Rule, a cornerstone of our jurisprudence for two hundred years, each party is required to bear the cost of his own attorneys' fees absent explicit congressional authorization to the contrary. See Key Tronic Corp. v. United States, 114 S. Ct. 1960, 1965 (1994); Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y, 421 U.S. 240, 249-50 (1975). The Alyeska court recognized only two exceptions to the American Rule: a court may award attorneys' fees if (1) the opposing party brings, defends, or continues the litigation in bad faith, or (2) an attorney acts to preserve or obtain a benefit for a plaintiff under the "common fund doctrine." See Kollsman, a Div. of Sequa Corp. v. Cohen, 996 F.2d 702, 707 n.4 (4th Cir. 1993).

The interpretation advanced by the Secretary is in accord with the American Rule. As discussed above, I am unable to discern the intent of Congress regarding the award of attorneys' fees incurred in successful appeals by plaintiffs under the ERA; thus, I cannot find the "explicit congressional authorization" required for the award of attorneys' fees under the American Rule. See Key Tronic Corp., 114 S. Ct. at 1965. In addition, neither exception to the American Rule applies: Blackburn has not alleged that the litigation was brought, continued, or defended in bad faith; and the common fund doctrine is clearly inapplicable under these circumstances.

The structure of the statute also demonstrates that the Secretary's interpretation is not unreasonable. Although Congress explicitly provided for the recovery of attorneys' fees in the subsections discussing administrative proceedings before the Secretary, see 42 U.S.C.A. § 5851(b)(2)(B), and actions before the district court to enforce an order of the Secretary, see 42 U.S.C.A.§ 5851(e) (West 1995), Congress conspicuously failed to provide for the award of attorneys' fees in the subsection discussing review before the courts of appeals, see 42 U.S.C.A. § 5851(c) (West 1995).[3]  This is a persuasive indication

_____

[3] Although this argument also supports a determination that the statute is not ambiguous in the first instance, I believe it is insufficient alone to demonstrate the clear intent of Congress required under Chevron in light of the ambiguity inherent in the phrase "in connection with."

15

that Congress did not intend to award attorneys' fees incurred in appeals under the ERA, because "`where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally in the disparate inclusion or exclusion.'" Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)); see also, e.g. , Key Tronic, 114 S. Ct. at 1967 (stating that where Congress included attorneys' fee awards in two sections but omitted them in two others, the"omissions strongly suggest a deliberate decision not to authorize such awards"); 2A Norman J. Singer, Statutes and Statutory Construction § 47.23, at 217 (5th ed. 1992) ("The force of the maxim [that all omissions should be understood as exclusions] is strengthened where a thing is provided in one part of the statute and omitted in another." (footnote omitted)).

Finally, I disagree with the majority and believe the Secretary's interpretation that attorneys' fees incurred during an appeal are not incurred "in connection with" the complaint is not unreasonable, because an appeal to this court from an unfavorable ruling of the Secretary is an action separate from the complaint itself. As the DeFord court noted,

> the award of costs (including attorneys' fees) allowable under section 5851 is specifically limited to encompass those incurred "for, or in connection with, the bringing of the complaint upon which the [Secretary's] order was issued." Before this court [the employee] did not incur any attorneys' fees or other costs for litigation of claims arising from the complaint upon which the Secretary's order was issued. That complaint was lodged against [the employer]. Rather, [the employee] incurred attorneys' fees and other costs before this court in pursuit of a distinguishable cause --complaints against the Secretary arising out of dissatisfaction with his order.

DeFord, 715 F.2d at 233 (first alteration in original). In support of its position, the majority asserts that under the Secretary's construction of the statute, had Blackburn prevailed before the Secretary, he would have been unable to recoup attorneys' fees and expenses incurred in

16

defending his award on appeal. See majority op. at 5 n.4. This is inaccurate; had Blackburn prevailed below, he would not be a proper party to an appeal by the employer. See Ellis Fischel State Cancer Hosp. v. Marshall, 629 F.2d 563, 566 & n.3 (8th Cir. 1980) (dismissing employee as a party to the appeal and refusing to award attorneys' fees under § 5851 because the employee was not"adversely affected or aggrieved by the Secretary's order"). Rather, the Secretary would have been the party responsible for defending the validity of the award on appeal. Obviously, Blackburn would be unlikely to incur attorneys' fees and expenses in an action to which he is not a party.

For these reasons, I find the interpretation advanced by the Secretary to be permissible and, therefore, Chevron compels me to defer to it. Accordingly I would hold that Blackburn is not entitled to an award of attorneys' fees pursuant to § 5851(b)(2)(B) because Blackburn's fees were not incurred "in connection with" the bringing of his complaint under the ERA.

II.

In addition to believing that the majority incorrectly employed a plenary standard of review, I find the majority's conclusion that attorneys' fees incurred in an appeal are incurred "in connection with" the bringing of the complaint to be supported by flawed reasoning. The majority's decision rests on its belief that Congress would have wanted plaintiffs under the ERA to be awarded attorneys' fees and expenses incurred in appeals from unfavorable rulings of the Secretary because such awards would advance the "overarching purpose" of the statute, see majority op. at 7-8; the majority holds this belief despite the absence of any direct or indirect evidence of Congress's intent.

In discussing the intent of Congress,[4] the majority is unable to

_____

[4] Nowhere in its opinion does the majority assert that congressional intent is unambiguously manifested by the statutory language. Indeed, even though the majority fails to state explicitly that it found the statutory language to be ambiguous, we must assume that it did because otherwise the majority would be unable to reach its analysis of legislative intent. See United States v. Southern Management Corp., 955 F.2d 914, 920 (4th Cir. 1992) ("If the words [of a statute] convey a clear meaning, courts may not sift through secondary indices of intent to discover alternative meanings.").

direct our attention to salient portions of the official Committee Reports evidencing an intent to authorize the Secretary to award attorneys' fees incurred by plaintiffs under the ERA in the successful prosecution of appeals. See Garcia, 469 U.S. at 76. Instead, to determine congressional intent, the majority relies on Local 17, International Association of Heat & Frost Insulators & Asbestos Workers v. Young, 775 F.2d 870 (7th Cir. 1985), in which the Seventh Circuit exercised de novo review of a district court's interpretation of an unrelated statute. See majority op. at 7-8.

In Young, the Seventh Circuit held that a district court had the power under § 102 of the Labor-Management Reporting & Disclosure Act of 1959 (LMRDA), 29 U.S.C.A. § 412 (West 1985), to award attorneys' fees incurred by plaintiffs in opposing an unsuccessful petition for certiorari to the Supreme Court. Young , 775 F.2d at 873. In reaching its decision, the court first noted that in the context of awarding attorneys' fees, the Supreme Court had expansively interpreted the equitable provision in the LMRDA authorizing courts to grant "such relief (including injunctions) as may be appropriate." See id. at 872-73 (internal quotation marks omitted). The court then reasoned that if "prevailing plaintiffs [ ] were forced to incur costs for unsuccessful, fruitless Union appeals, this would have a chilling effect on union members' ability to afford challenging the union leadership." Id. at 873. In other words, the court felt that to rule otherwise would frustrate the intent of Congress: Because union members prevailing in the district court would likely be unable to muster the financial resources to oppose the appeals of the union leadership, members would be effectively deprived of the protection Congress sought to provide under the statute. See id.

Young is distinguishable from this case and thus provides no support for the proposition that under the ERA attorneys' fees incurred in a successful appeal are recoverable by the plaintiff. Most importantly, Young involved a review by a court of appeals of a district court's interpretation of a statute; in those circumstances, a de novo review of the district court's construction is appropriate. See, e.g., Hall, 972 F.2d at 69. Here, however, we are charged with reviewing an administrative agency's interpretation of a statute, and we must apply the more deferential Chevron analysis. See Akindemowo, 61 F.3d at 284.

18

Furthermore, ignoring the different standard of review, the rationale employed by the Young court does not apply to Blackburn. The Young court sought to protect plaintiffs who had prevailed in the district court from bearing the costs of opposing unsuccessful appeals by union leadership advanced for the purpose of diminishing the financial resources of union members. See Young, 775 F.2d at 873. In contrast, under the ERA, employers who appeal unfavorable rulings of the Secretary are opposed at the appellate level by the Secretary. Thus, successful plaintiffs under the ERA do not face the same burden of defending awards on appeal that plaintiffs under the LMRDA face. Consequently, there is no corresponding danger under the ERA that employers will pursue appeals solely in an attempt to outlast the financial resources of employees.

In contrast to the assertions of the majority regarding congressional intent, I believe that "it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." Rodriguez v. United States, 480 U.S. 522, 526 (1987). As the Deford majority noted, "[i]t is as likely as not . . . that this situation represents a countervailing or co-existing policy that one who obtains relief before the Secretary and yet chooses to seek more will be required at the least to bear his attorneys' fees." Deford, 715 F.2d at 233.

Additionally, the twelve years of congressional inaction following the DeFord decision evidence that Congress did not intend for the Secretary to have the authority under the ERA to award to plaintiffs attorneys' fees incurred in a successful appeal. Although approval may not always be inferred from congressional silence, "once an agency's statutory construction has been `fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." United States v. Rutherford, 442 U.S. 544, 554 n.10 (1979) (quoting Apex Hosiery Co. v. Leader, 310 U.S. 469, 487-89 (1940)). Here, Congress extensively amended the statute in 1992 with knowledge of the construction the Sixth Circuit had placed upon the provision regarding the recovery of attorneys' fees for an appeal. See United States v. Langley, 62 F.3d 602, 605 (4th Cir. 1995) (en banc) (stating that Congress is presumed to act with knowledge of the judi-

19

ciary's interpretation of an existing statute), <u>cert. denied</u>, 116 S. Ct. 797 (1996). Thus, Congress's failure to correct the Secretary's interpretation when it amended the statute supports the construction advanced by the Secretary and demonstrates that Congress did not intend to authorize the Secretary to award attorneys' fees incurred in a successful appeal under the ERA.

III.

Although the majority offers countervailing arguments to the Secretary's arguments, the Supreme Court has counseled that the "accommodation of conflicting policies that were committed to the agency's care . . . is not a task we ought to undertake on the agency's behalf in reviewing its orders." <u>Department of Treasury</u>, 494 U.S. at 933 (internal quotation marks and citations omitted). Thus, under <u>Chevron</u>, the court should defer to the permissible construction of the statute urged by the Secretary and affirm his decision and order. <u>See Good Samaritan Hosp.</u>, 113 S. Ct. at 2161 ("[W]here the agency's interpretation of a statute is at least as plausible as competing ones, there is little, if any, reason not to defer to its construction."). In departing from the analysis mandated by <u>Chevron</u> and imposing its own statutory interpretation, the majority creates a conflict among the circuits and fails to accord the deference due to the Secretary's construction under controlling precedent. Accordingly, I dissent.