United States Court of Appeals,

Fifth Circuit.

No. 91-4684

Summary Calendar.

Minister David IREDIA, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Jan. 26, 1993.

Petition for Review of an Order of the Immigration and Naturalization Service.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Minister David Iredia, a Nigerian citizen, appeals his deportation pursuant to section 241(a)(4) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(4), as an alien who, after entering the United States, was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Iredia was determined deportable under this provision by an immigration judge whose findings were upheld by the Board of Immigration Appeals. Iredia contends that his criminal misconduct involved only a "single scheme". Further, he argues that the immigration judge denied him due process by not allowing him to testify on this point. We find Iredia's arguments concerning the interpretation of the statute incorrect in light of the deference we owe to the INS's interpretation of the immigration laws and, on the record presented, the immigration judge did not abuse his discretion in truncating Iredia's testimony. The decision of the Board of Immigration Appeals is affirmed.

FACTS

Iredia entered the United States as a non-immigrant visitor in 1982. His status was later changed to that of a lawful permanent resident. Using addresses and social security numbers of six different individuals, Iredia applied for 13 credit cards in their names without their consent. Once the credit card applications were approved they were mailed to post office boxes petitioner had rented

under false names.  In 1987, he created a fictitious business from which purchases of non-existent equipment were made with the illegal credit cards.  Iredia deposited the fraudulent credit card vouchers in the Alief Alamo Bank.

On February 22, 1988, Iredia was convicted in federal court in Houston, Texas, on 13 counts of unauthorized use of credit cards.  On seven of these counts, he received concurrent sentences of six years imprisonment;  on the remaining six counts, he also received concurrent sentences of six years imprisonment running consecutively to the first sentences.  The latter sentences were suspended, however, and five years probation imposed.  Iredia was also fined $91,000 as a special condition of probation, $45,059.28 as restitution and $650 as a special monetary assessment.

The immigration judge and, subsequently, the Board of Immigration Appeals found that Iredia's conduct involved more than one single scheme of criminal misconduct because he committed separate and distinct crimes each time he made unauthorized use of a different credit card for more than $1,000.  Iredia argues that since all of his crimes were executed in accordance with a single, pre-arranged plan they were part of a single scheme of criminal misconduct.

## STANDARD OF REVIEW

A two-prong standard of review applies to cases such as these.  Interpretations of ambiguous law by an executive agency are accorded considerable weight and deference.  *Chevron, U.S.A., Inc. v. National Resources Defense Counsel, Inc.,* 467 U.S. 837, 844-45, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984).  This court has accepted the *Chevron* standard and upheld reasonable agency interpretations of governing law when that law did not speak clearly to the question at hand.  *See, e.g., National Grain and Feed Ass'n v. Occupational Safety and Health Administration,* 866 F.2d 717, 733 (5th Cir.1988);  *Amberg v. Federal Deposit Insurance Corporation,* 934 F.2d 681, 687-88 (5th Cir.1991);  *Corrosion Proof Fittings v. Environmental Protection Agency,* 947 F.2d 1201, 1210 (5th Cir.1991).

After considering the legal standard under which the INS should operate, we review the Board's findings under the substantial evidence test. 8 U.S.C. § 1105a(a)(4);  *Rojas v. INS,* 937 F.2d 186, 189 (5th Cir.1991);  *Zamora-Morel v. INS,* 905 F.2d 833, 837 (5th Cir.1990).

DISCUSSION

Although there is an obvious conflict between INS's longstanding interpretation of the pertinent provision of the statute and that of the circuit courts upon which Minister Iredia relies[1], we do not find INS's interpretation unreasonable under *Chevron.* The cases cited by both sides agree that there is no clear Congressional intent on the definition of a "single scheme" of criminal misconduct. *Wood,* 266 F.2d at 828; *Pacheco,* 546 F.2d at 449; *Nason,* 394 F.2d at 227. Since the legislature has not spoken, *Chevron* directs us to accept the interpretation of the statute by the administrative agency so long as it is reasonable.

None of the cases cited by Iredia takes into account the *Chevron* presumption. The only case decided after *Chevron, Gonzalez-Sandoval,* 910 F.2d 614, does not address the issue. The INS in this case gives a convincing account of the reasonableness of its interpretation of the word "scheme" in explaining that "a focus on the pre-planning aspect of criminal activity can lead to theoretical absurdities." As INS states, under Iredia's theory, "an alien who is convicted of ten bank robberies cannot be deported under the part of 8 U.S.C. § 1251(a)(4) requiring that the crime does not arise out of a single scheme of criminal misconduct if he establishes the robberies were all carried out pursuant to a plan that he devised prior to executing them." The INS's position that a scheme exists based upon the execution of all the elements of a crime and that another scheme comprises the execution of another set of elements is more reasonable than Iredia's interpretation.[2] Under *Chevron,* however, this does not have to be the case to compel judicial deference to INS's interpretation. The INS merely has to show that its construction is reasonable, not that it is the more reasonable among

[1]There is multi-circuit split on this question. *Compare Matter of Z,* 6 I & N Dec. 167 (BIA 1954) (stating the INS's view of the matter); *Matter of J,* 6 I & N Dec. 382 (BIA 1954); *Fitzgerald ex rel. Miceli v. Landon,* 238 F.2d 864 (1st Cir.1956); *Pacheco v. INS,* 546 F.2d 448 (1st Cir.1976) *with Wood v. Hoy,* 266 F.2d 825 (9th Cir.1959); *Gonzalez-Sandoval v. INS,* 910 F.2d 614 (9th Cir.1990); *Sawkow v. INS,* 314 F.2d 34 (3d Cir.1963); *Nason v. INS,* 394 F.2d 223 (2d Cir.1968, *cert. denied* ), 393 U.S. 830, 89 S.Ct. 98, 21 L.Ed.2d 101 (1968).

[2]Under the INS interpretation, a transaction that morally constitutes a single crime is a single scheme, even if two crimes technically were committed or flowed from and were the natural consequence of a single act of criminal misconduct. *Matter of D_____,* 5 I & N Dec. 728, 729-30 (BIA 1954). As examples of a single scheme, INS cited the crimes of possessing and passing a counterfeit bill or breaking and entering for purposes of theft in connection with an assault with a deadly weapon.

alternatives. INS clearly meets this burden.

Applying INS's standard, there is no doubt that substantial evidence exists, including multiple convictions, to demonstrate Iredia's participation in multiple criminal schemes. Iredia further asserts that since he was not allowed to testify orally regarding facts that would support his interpretation of "a single scheme", he was denied due process. Because the legal standard that Minister Iredia was attempting to evidence was the wrong one, and because the nature of the scheme was thoroughly presented to the immigration judge in other ways, the error, if any, was harmless.

For the foregoing reasons, the deportation of Minister Iredia is AFFIRMED.