United States Court of Appeals,
Fifth Circuit.

No. 92-4955

Summary Calendar.

Akintunde Taofik ANIMASHAUN, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

May 12, 1993.

Petition for Review of an Order of the Board of Immigration Appeals.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

An immigration judge (IJ) found Akintunde Taofik Animashaun deportable as an alien who had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. 8 U.S.C. § 1251(a)(2)(A)(ii). The findings of the IJ were upheld by the Board of Immigration Appeals (the Board). Animashaun petitions for review and argues that he is not deportable because the two convictions arose, in fact, out of a single scheme. Animashaun further argues that he was denied due process during his deportation proceeding and his hearing was thus fundamentally unfair. We grant review and—bound as we are by precedent—affirm the order of the Board.

I

Animashaun, a native and citizen of Nigeria, entered the United States on September 5, 1981, as a nonimmigrant student. Animashaun later married an American citizen and on September 4, 1986, adjusted his status to a lawful permanent resident. On October 6, 1988, Animashaun was convicted in the state of Minnesota of offering a forged check. On March 16, 1992, Animashaun was convicted in the state of Georgia of two separate counts of forgery in the first degree and was sentenced to three years confinement.

After these convictions, the INS ordered Animashaun to show cause why he should not be

deported under section 241(a)(2)(A)(ii) of the Immigration and Nationality Act (INA) as an alien who, after entry in the United States, is convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.[1]  At the deportation hearing, the IJ found that Animashaun had been convicted of three crimes involving moral turpitude and found Animashaun deportable as charged by the INS.  The IJ also designated Nigeria as the country of deportation.

Animashaun appealed to the Board.  The Board rejected Animashaun's argument that the two convictions in Georgia arose out of a single scheme of criminal misconduct.  The Board instead found that Animashaun's convictions in Georgia were two complete, individual, and distinct acts that supported two separate convictions;  therefore, the two convictions did not arise out of a single scheme.  Because of this finding, the Board declined to reach Animashaun's argument that his conviction in Minnesota no longer existed for deportation purposes and consequently dismissed Animashaun's appeal.  Animashaun now petitions this court for review.

II

On appeal, Animashaun raises three issues.  First, Animashaun argues that his two convictions in Georgia arose out of a single scheme and therefore the requirements of section 241(a)(2)(A)(ii) have not been satisfied.  Second, Animashaun argues that his deportation hearing did not comply with regulatory and statutory requirements and with procedural due process under the Fifth Amendment.  Third, Animashaun argues that his conviction in Minnesota was discharged and thus cannot be considered as a conviction for purposes of section 241(a)(2)(A)(ii).

On the other hand, the INS argues that the Board properly concluded that Animashaun was convicted of two crimes in Georgia involving moral turpitude that did not arise out of a single scheme of criminal misconduct.  Furthermore, the INS argues that Animashaun's deportation hearing complied with regulatory and statutory requirements and with procedural due process under the Fifth Amendment.  Finally, the INS responds that it is irrelevant whether Animashaun's first conviction in

_____

[1]Specifically, section 241(a)(2)(A)(ii) provides that "[a]ny alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable."  8 U.S.C. § 1251(a)(2)(A)(ii).

Minnesota was discharged because the two convictions in Georgia are enough to meet the requirements of section 241(a)(2)(A)(ii).

## III

## A

Animashaun first challenges the Board's interpretation of the term "single scheme" as set forth in section 241(a)(2)(A)(ii).[2] We apply a two-prong standard of review to a question such as this. We first consider the legal standard under which the INS should make the particular deportability decision. If the governing statute does not speak clearly to the question at hand, this court has applied the standard announced in *Chevron, U.S.A., Inc. v. National Resources Defense Counsel, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and upheld agency interpretations of ambiguous law when that interpretation is reasonable. *Id.* After determining the controlling legal standard, we will next examine the Board's findings under the substantial evidence test to determine whether the legal standard has been satisfied. *Rojas v. INS,* 937 F.2d 186, 189 (5th Cir.1991). The substantial evidence standard requires only that the Board's conclusion be based upon the evidence presented and that it be substantially reasonable. *Silwany-Rodriguez v. INS,* 975 F.2d 1157, 1160 (5th Cir.1992).

## B

Animashaun argues that his two convictions in Georgia arose out of a single scheme. Animashaun was convicted in Georgia of two crimes, the first occurring on August 11, 1991, and the second on August 13, 1991. On August 11, Animashaun completed an instant credit application at a furniture store using a false identity; on August 13, Animashaun arrived at the store's warehouse to take delivery of that furniture by presenting the receipt with the forged signature. Animashaun was convicted of two separate counts of forgery: first, for forgery on the false credit application and, second, for forgery on the delivery receipt that he presented to take delivery of the furniture.

Animashaun relies on *Gonzalez-Sandoval v. INS,* 910 F.2d 614 (9th Cir.1990), a case in

---

[2]Animashaun does not challenge the Board's determination that forgery is indeed a crime involving moral turpitude.

which the Ninth Circuit held that two robberies, conceived and planned at the same time and occurring within two days of each other at the same bank, arose out of a single scheme of criminal misconduct. We have, however, rejected *Gonzalez-Sandoval* and its rationale. *Iredia v. INS,* 981 F.2d 847, 849 (5th Cir.1993). In *Iredia,* we re-affirmed our reliance on *Chevron,* which "directs us to accept the interpretation of the statute by the administrative agency so long as it is reasonable." *Id.* We noted that "[a]lthough there is an obvious conflict between the [Board's] longstanding interpretation of the pertinent provision of the statute" and the interpretation by other circuits, under *Chevron* the Board's interpretation was not unreasonable. *Id.*[3] Consequently, in this Circuit the appropriate legal standard to apply is the Board's interpretation of "single scheme": When an alien performs an act that in and of itself constitutes a complete, individual, and distinct crime, he is deportable when he again commits such an act, even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct. *See Matter of Adetiba,* Interim Decision 3177 (BIA 1992).

Having determined the legal standard for interpreting the statutory term "single scheme," we next examine whether substantial evidence supports the Board's finding, *i.e.,* that Animashaun's two convictions in Georgia did not arise out of a single scheme. Under the legal standard we are bound to apply, "single scheme" is not defined by the fact that the crimes were similar in nature, closely followed one another in time, and may have been part of an overall plan of criminal misconduct. Animashaun concedes, as indeed he must, that he was convicted of the two distinct crimes. Thus, under the statutory term, "single scheme," the two Georgia crimes did not arise out of a single scheme of criminal misconduct. Consequently, the Board's finding of no single scheme is supported by substantial evidence. Since we conclude that the two crimes in Georgia by themselves were sufficient for Animashaun to be deported under section 241(a)(2)(A)(ii), we need not reach Animashaun's third issue, *i.e.,* whether his criminal conviction in Minnesota has been discharged.

IV

---

[3] Were we reviewing this agency interpretation without our precedential guidance, we may have reached a different result. We are, of course, bound by our holding in *Iredia.*

A

Animashaun next argues that his deportation hearing did not comply with regulatory and statutory requirements and with procedural due process under the Fifth Amendment. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* --- U.S. ----, ----, 113 S.Ct. 1439, 1449, --- L.Ed.2d ---- (1993). Accordingly, the IJ must conduct deportation hearings in accord with due process standards of fundamental fairness. *Olabanji v. INS,* 973 F.2d 1232, 1234 (5th Cir.1992). To render a hearing unfair, the defect complained of must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process. *Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir.1981).

B

Animashaun argues that his due process rights were violated because (1) the IJ conducted a group deportation hearing, (2) the IJ did not explain the basis of his decision, and (3) the IJ did not allow him to address whether the two offenses in Georgia arose out of a single scheme. Animashaun argues that these procedural defects in his deportation hearing rendered the entire proceeding fundamentally unfair. The INS argues that, to the contrary, Animashaun's deportation hearing complied with regulatory and statutory requirements and with procedural due process under the Fifth Amendment.

C

This court addressed the fairness of group deportation hearings in *United States v. Palacios-Martinez,* 845 F.2d 89 (5th Cir.), *cert. denied,* 488 U.S. 844, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988). In this case, we found no fundamental unfairness in the *en mass* nature of a deportation hearing because the alien (1) was informed of his basic rights; (2) had the opportunity to exercise these rights; (3) was queried individually by the IJ as to the facts of his deportation; and (4) exhibited his understanding of the process at that time. Our holding in *Palacios-Martinez* is clear: Group deportation hearings are not *per se* unconstitutional, but the hearing must comport with due process requirements. *See also United States v. Polanco-Gomez,* 841 F.2d 235 (8th Cir.1988); *United States*

*v. Nicholas-Armenta,* 763 F.2d 1089 (9th Cir.1985).

Animashaun argues that his hearing was fundamentally unfair because the IJ did not make detailed findings of fact explaining the basis of its decision. This court has previously held, however, that an IJ may render opinions in deportation proceedings either orally or in writing; all that is required is that the decision include a discussion of the evidence and an enumeration of findings regarding deportability. *Equan v. INS,* 844 F.2d 276, 279 (5th Cir.1988). The IJ's decision specifically refers to section 241(a)(2)(A)(ii) and discusses Animashaun's convictions in Georgia and Minnesota. This opinion by the IJ satisfies the requirements set out in *Equan.*

Next, Animashaun argues that his hearing was fundamentally unfair because the IJ did not allow him to address whether the two convictions in Georgia arose out of a single scheme. The IJ questioned Animashaun about his one conviction in Minnesota and about his two convictions in Georgia. The IJ specifically asked Animashaun about the Georgia convictions and gave Animashaun the opportunity to explain any relevant matters concerning these convictions. We have no trouble concluding that Animashaun was not deprived of due process, and his group deportation hearing was not fundamentally unfair.

V

For the reasons set forth above, we affirm the order of the Board. Applying the Board's standard, substantial evidence exists to demonstrate that Animashaun's two convictions in Georgia did not arise from a single scheme; therefore, the requirements of section 241(a)(2)(A)(ii) have been satisfied. Furthermore, Animashaun's due process rights were not violated in the hearing before the IJ. Accordingly, the deportation order of Animashaun is

AFFIRMED.