**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-60559.

Benjamine Maduka OKORO, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Oct. 27, 1997.

Petition for Review of an Order of the Board of Immigration Appeals.

Before GARWOOD, DUHÉ and DEMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

Petitioner Benjamine Maduka Okoro ("Okoro") seeks review of a final order of deportation by the Board of Immigration Appeals ("BIA"). For the reasons that follow, we find that we have no jurisdiction to entertain Okoro's petition.

BACKGROUND

Okoro, a citizen of Nigeria, originally entered the United States in 1983 as a student. In 1986, he was convicted in Texas of issuing worthless checks. Based on his marriage to a United States citizen, he applied for an adjustment to his status in 1988 and became a legal permanent resident in 1990. Okoro left the United States in early 1992 and, when he returned in June 1992, was admitted as a returning student.

In July, 1992, Okoro was convicted in Delaware on two counts of theft and was sentenced to two consecutive terms of one year

1

imprisonment, with each sentence suspended. The convictions were based on the following facts: in July, 1991, Okoro, using another's name, ordered computer equipment by telephone; on August 5, 1991, the UPS delivered part of the order, and Okoro paid with a check issued in the name of another person; on August 7, 1991, the rest of the order was delivered and Okoro paid with a similarly unauthorized check.[1]

On January 24, 1994, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Okoro. In its Order to Show Cause ("OSC"), the INS asserted Okoro was deportable, *inter alia,* under § 241(a)(2)(A)(ii)[2] of the Immigration and Nationality Act ("INA"), in that he had been convicted of two crimes involving moral turpitude: the 1986 Texas conviction for issuing bad checks and one of the two 1992 Delaware convictions for theft.[3] On October 27, 1994, the Immigration Judge

---

[1]Okoro used the name and the closed checking account of a former colleague who was serving time in prison.

[2]INA § 241(a)(2)(A)(ii)(renumbered as INA § 237 by IIRIRA § 305(a)(2)) provides:

> Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

*See* 8 U.S.C. § 1251(a)(2)(A)(ii) (West supp.1997)(redesignated as 8 U.S.C. § 1227(a)(2)(A)(ii), eff. April 1, 1997).

[3]The INS also asserted that Okoro was deportable under INA § 241(a)(1)(A) (excludable at time of entry because convicted of crime of moral turpitude), relying on the Texas conviction, and under INA § 241(a)(1)(G)(ii) (failure to fulfill marital agreement made to procure entry as an immigrant). The latter ground was subsequently withdrawn.

("IJ") terminated the proceedings against Okoro. The IJ found that the crime underlying the Texas conviction did not involve moral turpitude and thus neither ground of deportability asserted applied. The IJ noted that Okoro "might be deportable" on the independent ground that he had been convicted of two counts of theft in Delaware. Since the INS did not raise the second Delaware conviction, however, the IJ did not reach that issue and terminated the proceedings.

On October 31, 1994, the INS issued a new OSC asserting that Okoro was deportable under INA § 241(a)(2)(A)(ii), based on the two Delaware theft convictions. Okoro moved to terminate the proceedings, asserting that they were barred by res judicata, that the underlying crimes did not involve moral turpitude, that he was not sentenced to imprisonment of one year or longer, and that the two crimes arose out of a single scheme of criminal conduct. Following a hearing on December 2, 1994, the IJ, without addressing his motion to terminate, ordered Okoro deported. Okoro appealed to the BIA, which found that the IJ should have considered the motion to terminate on the record and thus remanded the case to the IJ for further proceedings.

Following another hearing, in which Okoro raised his previous claims, the IJ issued a second decision on June 12, 1995, rejecting all of Okoro's arguments and ordering him deported pursuant to INA § 241(a)(2)(A)(ii) for having committed two crimes of moral turpitude that were not part of a single scheme of criminal misconduct. On June 16, 1995, Okoro appealed to the BIA, which

dismissed his appeal on March 6, 1996. Okoro filed a petition for review in the United States Court of Appeals for the Third Circuit on March 22, 1996. The Third Circuit granted Okoro's motion to transfer venue to the Fifth Circuit on August 21, 1996.

DISCUSSION

In his petition for review, Okoro raises the following issues: that the deportation proceedings brought under the second OSC were barred by res judicata and collateral estoppel; that the second OSC was actually a motion to reopen that did not meet the requirements of 8 C.F.R. § 242.22 and thus deprived Okoro of his right to procedural due process; that the Delaware theft convictions were not for crimes involving moral turpitude; and, that both crimes were part of a single scheme of criminal misconduct.

As a threshold matter, however, we must address the question of jurisdiction. The INS asserts that under the INA, as recently amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, and by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009, we lack jurisdiction over this petition for review. After considering the effect of the two recent statutes, we must agree.

The AEDPA became effective on April 24, 1996. We are here concerned with Title IV of the AEDPA, "Terrorist and Criminal Alien Removal and Exclusion," and specifically subsection 440(a). That

4

subsection amends § 106 of the INA (8 U.S.C. § 1105a(a)(10))[4] to read:

> Any final order of deportation against an alien who is deportable by reason of having committed ... any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i),[5] shall not be subject to review by any court.

In *Mendez-Rosas v. INS,* 87 F.3d 672, 676 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997), we held that § 440(a) of the AEDPA applies retroactively to appeals

---

[4]8 U.S.C. § 1105a(a)(10) was repealed by IIRIRA § 306(b), effective September 30, 1996. The substance of § 1105a(a)(10) can now be found at 8 U.S.C. § 1252(a)(2)(C) (West Supp.1997).

[5]INA § 241(a)(2)(A)(i) provides:

> Any alien who—
>
> > (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of entry, and
> >
> > (II) either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer,
>
> is deportable.

*See* 8 U.S.C. § 1251(a)(2)(A)(i) (West Supp.1996). AEDPA § 435 amended § 241(a)(2)(A)(i)(II) to read: "is convicted of a crime for which a sentence of one year or longer may be imposed." Section 435 is expressly applicable only to "aliens against whom deportation proceedings are initiated after the date of enactment of this Act." AEDPA § 435(b); *see* 8 U.S.C. § 1251(a)(2)(A)(i) (West Supp.1997) (redesignated as 8 U.S.C. § 1227(a)(2)(A)(i), eff. April 1, 1997). Since deportation proceedings were initiated against Okoro prior to April 24, 1996, the pre § 435 provision applies. *See Pichardo v. INS,* 104 F.3d 756, 758-59 (5th Cir.1997).

pending before the effective date of the AEDPA.[6] Observing that Congress did not expressly provide an effective date for § 440(a), we analyzed the provision under *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[7] We found that

[6]We note that every other Circuit to address this issue has also held that § 440(a) applies to cases pending on the effective date of the AEDPA. *See Kolster v. INS*, 101 F.3d 785 (1st Cir.1996); *Hincapie-Nieto v. INS*, 92 F.3d 27 (2d Cir.1996); *Salazar-Haro v. INS*, 95 F.3d 309 (3d Cir.1996), *cert. denied*, --- U.S. ----, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997); *Qasguargis v. INS*, 91 F.3d 788 (6th Cir.1996), *cert. denied*, --- U.S. ----, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997); *Chow v. INS*, 113 F.3d 659 (7th Cir.1997); *Mendez-Morales v. INS*, 119 F.3d 738 (8th Cir.1997); *Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996); *Fernandez v. INS*, 113 F.3d 1151 (10th Cir.1997); *Boston-Bollers v. INS*, 106 F.3d 352 (11th Cir.1997).

[7]The Supreme Court's recent decision in *Lindh v. Murphy*, --- U.S. ----, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), does not cast serious doubt on *Mendez-Rosas*. *Lindh* dealt with a different section of the AEDPA (Title I, § 107(c), making new chapter 154 of Title 28, relating to habeas corpus proceedings in capital cases, applicable to cases pending on the AEDPA's effective date). The *Lindh* Court noted that Title I "stands more or less independent of the Act's other titles" and based its holding on the specific language of AEDPA § 107(c). *Lindh*, --- U.S. at ----, 117 S.Ct. at 2063; *see Mendez-Morales*, 119 F.3d at 739 n. 1 ("Because Lindh turned upon the drafting peculiarities of Title I, we apply the Landgraf rule to § 440(a).").

In *Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034 (5th Cir.1997), we noted that *Lindh* should have no effect on whether another subsection of AEDPA § 440, § 440(*d* ), applied to pending cases seeking discretionary relief under INA § 212(c). *Hernandez-Rodriguez*, 118 F.3d at 1046. We observed that § 440(d) contained no language addressing its applicability to pending cases that would have permitted a "negative implication" analysis like the one employed in *Lindh. Id.; see Lindh*, --- U.S. at ----, 117 S.Ct. at 2063-68. We also stated that "[i]n this regard, section 440(d) is similar to section 440(a), which we have held (prior to Lindh) to apply to pending deportation cases." *Hernandez-Rodriguez*, 118 F.3d at 1046. *But see Yesil v. Reno*, No. 96-CIV-8409, 1997 WL 394945 (S.D.N.Y. July 15, 1997) *and Mojica v. Reno*, 970 F.Supp. 130 (E.D.N.Y.1997) (finding the *Lindh* analysis applicable to § 440(d) of the AEDPA).

§ 440(a) was "easily classified as jurisdictional in nature" and was thus presumed to apply retroactively. *Mendez-Rosas,* 87 F.3d at 676, *citing Landgraf*, 511 U.S. at 280-81, 114 S.Ct. at 1505. We further found that Petitioner Mendez-Rosas had not rebutted that presumption of retroactivity by showing that § 440(a)'s jurisdictional bar "curtailed one or more of Petitioner's substantive rights." *Mendez-Rosas,* 87 F.3d at 676.

Thus, INA § 106, as amended by § 440(a) of the AEDPA, applies to Okoro's petition for review, even though his petition was pending on the effective date of the AEDPA.

The question is somewhat complicated by the fact that IIRIRA, signed into law on September 30, 1996, amended, *inter alia,* §

---

The accuracy of those observations notwithstanding, we here note that § 440(a), unlike the provisions addressed in *Lindh,* is clearly jurisdictional ("... shall not be subject to review by any court") and thus benefits from a presumption of retroactivity. *See Landgraf*, 511 U.S. at 274-76, 114 S.Ct. at 1502 ("Application of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case ... Present law normally governs in such situations because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties.") (citation and internal quotation marks omitted). We also note that other sections in AEDPA Title IV contain explicit effective dates. *See, e.g.,* § 401(f)(amendments to take effect on date of enactment and apply to all aliens without regard to date of entry); § 435(b) (amendment applies to deportation proceedings initiated after effective date); § 440(f) (amendments in subsection (e) apply to convictions entered on or after effective date); § 441(b) (amendment applies to criminal proceedings initiated after effective date). The various time frames of the effective dates in Title IV do not create the "negative implication," as did § 107(c) in *Lindh,* that Congress intended § 440(a) not to apply to appeals pending on the AEDPA's effective date. *See Lindh,* --- U.S. at ----, 117 S.Ct. at 2068 (finding that express application of new chapter 154 of Title 28 to "pending cases" created "negative implication" that amendments to chapter 153 did not apply to pending cases).

7

440(a) of the AEDPA.  IIRIRA § 306(d), a "technical amendment" to the AEDPA, reads as follows:

> *Effective as if included in the enactment of the [AEDPA],* subsections (a), (c), (d), (g), and (h) of section 440 of such Act are amended by striking "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" and inserting "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, *without regard to the date of their commission,* otherwise covered by section 241(a)(2)(A)(i)".

(emphasis added).  By its own terms, IIRIRA § 306(d) applies as if enacted with the AEDPA.  Since we have already determined that AEDPA § 440(a) applies to Okoro's pending petition for review, we apply that version of § 440(a) as amended by IIRIRA § 306(d).  *See Pichardo v. INS,* 104 F.3d 756, 758 & n. 3 (5th Cir.1997) ("The relevant IIRIRA provision, section 306(d), has its own effective date that is different than most of the IIRIRA's provisions.").

Our recent decision in *Anwar v. INS,* 116 F.3d 140 (5th Cir.1997)(replacing *Anwar v. INS,* 107 F.3d 339), seems to contradict *Pichardo* regarding the applicability of IIRIRA § 306(d).  *See Anwar,* 116 F.3d at 143.  In *Anwar,* we construed the transitional provision of IIRIRA, § 309(c)(1), as including § 306(d);  thus, where an alien was in deportation proceedings on the general effective date of the IIRIRA [April 1, 1997 (*see* IIRIRA § 309(a)) ], those proceedings (including judicial review thereof) would "continue to be conducted without regard to such amendments," including § 306(d).  IIRIRA § 309(c)(1)(B).  *Anwar* admitted that its reasoning regarding the effective date of § 306(d) would create an "apparent inconsistency" with *Pichardo,* but added that the result in *Pichardo* would have been the same even had the panel

8

reached the merits.  *Anwar,* 116 F.3d at 143 n. 2.

Notwithstanding any language to the contrary in *Anwar,* we read IIRIRA § 306(d) to apply, per its explicit direction, "as if included in the enactment of" AEDPA § 440(a).[8]  We observe that a successive panel of this Court may not overrule a prior panel.  *See Lowrey v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997);  *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3108 (U.S. July 21, 1997)(No. 97-126).  We think this rule obtains even if, as in the case of *Pichardo* and *Anwar,* the membership on the two panels is identical.  We therefore follow *Pichardo.*

Additionally, we note that the language of § 306(d) is specific, while the language of § 309(c)(1) is general.  To give effect to § 309(c)(1) and thus apply 306(d) only to deportation proceedings begun 180 days after the IIRIRA's effective date (as § 309(a) directs) would deprive the explicit language in § 306(d) of any meaning.

Thus, we apply to Okoro's petition the following version of AEDPA § 440(a), as amended by IIRIRA § 306(d):

> Any final order of deportation against an alien who is deportable by reason of having committed ... any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission,

---

[8]We observe that we are in accord with the Sixth and Ninth Circuits on this point.  *See Perez v. INS,* 116 F.3d 405, 407-08 (9th Cir.1997)(applying AEDPA § 440(a), as amended by IIRIRA § 306(d), to petition for review pending on effective date of IIRIRA); *Figueroa-Rubio v. INS,* 108 F.3d 110, 111-12 & nn. 2, 3 (6th Cir.1997)(observing that IIRIRA § 306(d) contains explicit effective date provision and that, therefore, "the IIRIRA's amendments to § 440(a) took effect on April 24, 1996.").

otherwise covered by section 241(a)(2)(A)(i), shall not be subject to review by any court.[9]

To determine whether this jurisdictional bar applies to Okoro's petition for review, we must examine whether the underlying offenses relied on by the INS to deport Okoro are (1) crimes involving moral turpitude, (2) not arising out of a single scheme of criminal misconduct, and (3) for which Okoro was sentenced to one year or more of imprisonment, regardless of actual confinement. *See* INA §§ 241(a)(2)(A)(i) and (ii); *Yang v. INS,* 109 F.3d 1185, 1192 (7th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3157 (U.S. Aug. 12, 1997)(No. 97-279).[10]

We observe initially that Okoro was sentenced to two consecutive terms of one year imprisonment. That the sentences

---

[9]We apply the following version of § 241(a)(2)(A)(i), as unamended by AEDPA § 435, but omitting any reference to the date of the crime's commission per the command of IIRIRA § 306(d):

> [A]n alien who—
>
> > (I) is convicted of a crime involving moral turpitude ... after the date of entry, and
> >
> > (II) either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer,
>
> is deportable.

*See Pichardo,* 104 F.3d at 756.

[10]"When judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists. The doctrine that a court has jurisdiction to determine whether it has jurisdiction rests on this understanding." *Yang,* 109 F.3d at 1192, *citing Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). The Tenth Circuit has declined to follow the *Yang* holding on this issue. *See Berehe v. INS,* 114 F.3d 159, 161 (10th Cir.1997).

10

were suspended and Okoro was not actually confined is irrelevant. *See* 8 U.S.C. § 1251(a)(2)(A)(ii) (West Supp.1997) (redesignated as 8 U.S.C. § 1227(a)(2)(A)(ii), eff. April 1, 1997).

The term "moral turpitude" is not defined in the INA; interpretation of the phrase is thus left up to the BIA and the courts. *Pichardo,* 104 F.3d at 759; *see Hamdan v. INS,* 98 F.3d 183, 185 (5th Cir.1996). We review *de novo* the BIA's legal determination that the crime of theft under Delaware law involves moral turpitude, according, however, substantial deference to the BIA's interpretation of the INA. *Hamdan,* 98 F.3d at 185. We will uphold the BIA's determination of what conduct constitutes moral turpitude for deportation purposes if it is reasonable. *Id.*

Whether a crime involves moral turpitude depends on the inherent nature of the crime, as defined in the statute concerned, rather than the circumstances surrounding the particular transgression. *Okabe v. INS,* 671 F.2d 863, 865 (5th Cir.1982).[11] In its decision the BIA observed that theft has long been considered a crime involving moral turpitude. The Second Circuit has held that "it has long been acknowledged ... that crimes of theft, however they may be technically translated into domestic penal provisions, are presumed to involve moral turpitude." *Chiaramonte v. INS,* 626 F.2d 1093, 1097 (2d Cir.1980). *See also*

---

[11]Okoro was convicted of theft under 11 Del.Code § 841, which provides in pertinent part:

> (a) A person is guilty of theft when the person ... obtains property of another person intending to deprive that person of it or appropriate it.

11

*United States v. Villa-Fabela,* 882 F.2d 434, 440 (9th Cir.1989), *overruled on other grounds by United States v. Proa-Tovar,* 975 F.2d 592, 595 (9th Cir.1992)(en banc); *Soetarto v. INS,* 516 F.2d 778, 780 (7th Cir.1975). Although we are aware of no Fifth Circuit cases so holding, we accord due deference to the BIA's and other Circuits' interpretation of the INA and find that the crime of theft is one involving moral turpitude within the meaning of INA §§ 241(a)(2)(A)(i) and (ii).

In determining whether Okoro's crimes were part of a single scheme of criminal misconduct, we apply a two-prong analysis. First, we identify the legal standard governing the issue. *See Iredia v. INS,* 981 F.2d 847, 849 (5th Cir.1993); *Chevron U.S.A. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We then examine whether substantial evidence supports the BIA's finding that Okoro's two Delaware convictions did not arise out of a single scheme. The substantial evidence standard requires only that the BIA's conclusion be based upon the evidence presented and that it be substantially reasonable. *Hamdan,* 98 F.3d at 185; *see Silwany-Rodriguez v. INS,* 975 F.2d 1157, 1160 (5th Cir.1992).

The controlling legal standard for interpreting "single scheme" was set forth in *Animashaun v. INS,* 990 F.2d 234, 237 (5th Cir.1993):

> When an alien performs an act that in and of itself constitutes a complete, individual, and distinct crime, he is deportable when he again commits such an act, even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct.

12

Okoro was convicted of two counts of theft in Delaware; thus, he cannot contend the two underlying offenses are not "complete, individual, and distinct" crimes, even though the second theft followed the first by a mere two days. *See Animashaun,* 990 F.2d at 238. Instead, Okoro argues the two distinct crimes were part of a single criminal scheme because he ordered the computer equipment at one time and the components arrived separately by mere happenstance.

In *Animashaun,* the Petitioner completed an instant credit application at a furniture store using a false identity. Two days later, the Petitioner arrived at the store's warehouse to take delivery of furniture by presenting a receipt with a forged signature. He was convicted of two separate counts of forgery. We held that substantial evidence supported the BIA's conclusion that the two crimes were not part of a single scheme. *Animashaun,* 990 F.2d at 237-38.

Like the Petitioner in *Animashaun,* Okoro committed two crimes within two days of each other. Both offenses had a single aim—to obtain computer equipment—just as Animashaun's two crimes were both directed at buying the same furniture. Neither their proximity in time nor their similarity in purpose prevents Okoro's acts from constituting two distinct crimes. In the two-day interval between the offenses, Okoro had time to "dissociate himself from his enterprise and reflect on what he [had] done." *Pacheco v. INS,* 546 F.2d 448, 451 (1st Cir.1976). We thus find there was substantial evidence to support the BIA's conclusion that Okoro's two crimes

13

were not part of a single scheme of criminal misconduct.

CONCLUSION

Because Okoro was found deportable under INA § 241(a)(2)(A)(ii) and because both predicate offenses were covered under § 241(a)(2)(A)(i), we find we have no jurisdiction to review his final order of deportation.  We therefore do not reach his other claims.

DISMISSED FOR LACK OF JURISDICTION

14