**UNITED STATES of America,
Plaintiff,**

v.

**Hossein SAMAEI, Defendant.**

**No. 6:02–CV–401–ORL–31JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

May 5, 2003.

Ralph E. Hopkins, U.S. Attorney's Office, Orlando, FL, Thomas F. Baxley, Office of Immigration, Miami, FL, for Plaintiff.

Richard P. Condon, Kissimmee, FL, for Defendant.

## ORDER

PRESNELL, District Judge.

Defendant, Hossein Samaei, is a naturalized citizen of Iranian descent who has lived in this country for 25 years. By this action, the United States seeks to revoke Defendant's U.S. citizenship because he stole a pair of sunglasses seven-and-a-half years ago. The matter is now before the Court on consideration of the United States' Motion for Summary Judgment (Doc. 15) and its Memorandum in Support thereof (Doc. 16) as well as Defendant's Response thereto (Doc. 24). The Court heard oral argument on April 28, 2003.

## I. Background

In 1978, Defendant entered the United States from his native Iran on a student visa.[1] On December 20, 1990, Defendant was arrested for petit theft of merchandise from a department store. Defendant testified that his then-wife actually stole the items from the store, but that he tried to take the blame for her. Nonetheless, on January 11, 1991, Defendant pled guilty to a charge of petit theft[2] in violation of Florida Statute § 812.014. Adjudication was withheld, and Defendant was sen-

---

1. Defendant is now 48 years old.

2. Defendant's ex-wife also was arrested and charged with petit theft.

tenced to five days community service and a $150 fine. (Doc. 17, Ex. 4).

On February 17, 1995, Defendant completed an application for naturalization with the Immigration and Naturalization Service ("INS").[3] (Doc. 17, Ex. 10). On September 7, 1995, INS Officer Mary Schneider interviewed Defendant under oath regarding the contents of his application and his eligibility for naturalization. Defendant had answered "no" to Question 15(b), which asked: "Have you ever: been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance excluding traffic regulations?" (*Id.*). During the interview with Officer Schneider, however, Defendant admitted that he had been arrested for and convicted of petit theft in 1990.[4] Based on that new information, Officer Schneider continued Defendant's application for naturalization and sent Defendant a final request letter for production of documentation regarding all arrests and convictions as well as a personal statement describing the details of the arrests/convictions. (Doc. 17, Ex. 13). On September 14, 1995, Defendant complied with this request and submitted to the INS the relevant charging affidavit and order of disposition as well as a handwritten letter explaining the circumstances of his 1990 petit theft arrest and conviction. (Doc. 17, Ex. 14).

On September 15, 1995, eight days after his interview with Officer Schneider and one day after he submitted his supplemental letter regarding the 1990 petit theft to the INS, Defendant was arrested for shoplifting a pair of sunglasses.

Ten days later, on September 25, 1995, after having reviewed Defendant's newly submitted documents regarding the 1990 petit theft, the INS approved Defendant's application and sent him a Notice of Naturalization Oath Ceremony Form N–445A. (Doc. 17, Ex. 11). The Form asked Defendant seven questions, and informed Defendant that he should bring the answers to the questions to his Naturalization Oath Ceremony in Miami on February 20, 1996.

After his interview with Officer Schneider but before his oath ceremony, Defendant pled guilty to a charge of petit theft for the sunglasses in violation of Florida Statute § 812.014(3)(a). On December 20, 1995, Defendant was sentenced to one-day imprisonment, six months supervised probation, 50 hours community service, and a $250 fine. (Doc. 17, Ex. 8).

On February 20, 1996, Defendant brought the answers to the seven questions from Form N–445A to Miami. Question 3 asked: "After the date you were first interviewed on your Application ... Have you ever knowingly committed any crime or offense, for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations?" (*Id.*). Defendant first answered "no" to this question but then amended his answer to "yes" in order to disclose his 1990 arrest/conviction. Notably, however, Defendant did not disclose his 1995 arrest/conviction. If Defendant had disclosed the 1995 petit theft, he would have been sent to the "problem desk," where the supervisory district adjudications offi-

---

**3.** On March 1, 2003, INS was moved from the U.S. Department of Justice to the U.S. Department of Homeland Security. It has been renamed the Bureau of Citizenship and Immigration Services ("BCIS"). Because the facts at issue occurred prior to the renaming, the Court herein will continue to refer to the BCIS as the INS.

**4.** The statutory period for good moral character begins five years prior to the filing of the application and continues until the applicant takes the oath of allegiance.

cer on duty would have determined if the details of the answer would affect naturalization eligibility. Defendant then would have been rescheduled for a follow-up interview. (Doc. 17, Ex. 17 at ¶ 7; Doc. 17, Ex. 16 at ¶ 9).[5] Disclosure of the second petit theft charge may have affected Defendant's naturalization, because the two crimes of petit theft could have been considered crimes of "moral turpitude" which would indicate that Defendant lacked the good moral character required for naturalization. (Doc. 17, Ex. 17 at ¶ 9; Doc. 17, Ex. 16 at ¶ 9). However, because Defendant only disclosed the one petit theft, he was sworn in as a U.S. citizen on February 20, 1996.

On April 2, 2002, more than six years after Defendant became naturalized, the United States filed a complaint to revoke Defendant's citizenship, alleging two Counts. Count I sought revocation because Defendant illegally procured his citizenship. Count II sought revocation because Defendant misrepresented or concealed the material fact of the second petit theft to illegally procure his citizenship. After discovery, the United States has moved for summary judgment to which Defendant filed a brief in opposition and a supporting affidavit.

## II. Standard of Review

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated "against a party who fails to make a show-

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 323, 106 S.Ct. 2548. In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If the record presents factual issues, the court must not decide them, but rather, must deny the motion and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).[6]

## III. Analysis

American citizenship is a right as precious as life and liberty. *Klapprott v. United States*, 335 U.S. 601, 616–17, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (J. Rutledge, concurring in result). Once citizenship has been conferred, it should not be taken away without the clearest justification and proof. *Fedorenko v. United States*, 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981); *United States v. Vlamakis*, 2002 WL 230909 at * 3 (N.D.Ill. Feb.15, 2002) (citing *inter alia Schneiderman v. United States*, 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943)). Thus, in a denaturalization proceeding, a court should revoke citizenship only if the United States presents clear, unequivocal, and convincing evidence that leaves the issue of illegality free of doubt. *United States v. Koziy*, 728

5. The affidavits of Officer Schneider and Supervisory District Adjudications Officer Sonia Florez were filed respectively as Exhibits 16 and 17 to Document 17.

6. All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

F.2d 1314, 1318 (11th Cir.1984) (citing *Fedorenko*); *United States v. Palciauskas*, 559 F.Supp. 1294, 1296 (M.D.Fla.1983) (citing *Schneiderman*).

■ Under the Immigration and Nationality Act of 1952 ("INA") § 340(a), 66 Stat. 260, as amended, 8 U.S.C. § 1451(a), the Government, upon affidavit showing good cause, shall institute a proceeding to revoke a citizenship order on the ground that the order and certificate of naturalization were "illegally procured or procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Although all inferences must be drawn in favor of the citizen, *Palciauskas*, 559 F.Supp. at 1296, if the court finds that citizenship was illegally procured or procured by concealment of material fact or willful misrepresentation, it must revoke citizenship. *Fedorenko*, 449 U.S. at 517, 101 S.Ct. 737 (noting that district courts lack equitable discretion to refrain from entering a denaturalization judgment against a one who illegally procured citizenship). This is so because an alien must strictly comply with the statutory conditions precedent to naturalization. *Id.* at 506, 101 S.Ct. 737 ("This judicial insistence ... is simply an acknowledgment of the fact that Congress alone has the constitutional authority to prescribe rules for naturalization"). District courts are therefore left with the task of assuring compliance with the "particular prerequisites to the acquisition of United States citizenship by naturalization legislated to safeguard the integrity of this 'priceless treasure.'" *Id.* (internal citations removed).

■ In this case, the United States first argues that Defendant illegally procured his naturalization because he was convicted of two crimes involving "moral turpitude" during the relevant statutory period and that he therefore lacked "good moral character" to be naturalized in the first place.

The INA does not define "good moral character" except by setting forth a non-exhaustive list of instances in which a person shall *not* be regarded as one of good moral character. These reasons include: one who is a habitual drunkard or gambler; one who *inter alia* has committed and been convicted of more than one crime involving moral turpitude under section 212(a); one who has given false testimony for the purpose of obtaining INA benefits; one who has served 180 days or more in jail; or one who has been convicted of an aggregated felony. INA § 101(f), codified at 8 U.S.C. § 1101(f)(1), (3)-(8). The United States here claims that, at the time Defendant procured citizenship, Defendant was not of good moral character as defined by § 1101(f)(3), where a person is considered not of good moral character if he has committed and been convicted of more than one crime involving moral turpitude under § 212(a) of the INA.

Under § 212(a), certain classes of aliens are deemed ineligible for visas or admission to the United States. Specifically, § 212(a)(2)(A)(i)(I) provides that a person who has been convicted or admits to have committed the essential elements of a crime involving moral turpitude is inadmissible. Section 212(a)(2)(A)(ii) further provides, however, that § 212(a)(2)(A)(i)(I) shall not apply to an alien who committed only one crime if the maximum penalty did not exceed imprisonment for one year and if convicted, the alien was not sentenced in excess of six months. In the instant case, Defendant was convicted of two crimes of petit theft during the statutory period which, had they been disclosed, would have brought him within the exclusions of § 1101(f)(3) and § 212(a)(a)(2)(A)(ii). *See, e.g., Vlamakis*, 2002 WL 230909 at *3 (court had to revoke citizenship because defendant was convicted of two crimes—retail thefts—involving moral turpitude during the statutory period); (*see also*

Doc. 17, Ex. 17 at ¶ 9; Doc. 17, Ex. 16 at ¶ 9).

The INA also does not define "moral turpitude," but the Court should defer to the definitions fashioned by other courts.[7] In *Okoro v. INS,* 125 F.3d 920, 926 (5th Cir.1997), for example, the Fifth Circuit reviewed a final deportation order by the Bureau of Immigration Appeals (BIA) upon the alien's petition for judicial review.[8] The court found that ·a crime's inherent nature, not the particular circumstances surrounding the crime, determined whether the act at issue involved moral turpitude. *Id.* The court noted, in deference to the BIA and other courts, that theft had long been considered a crime of moral turpitude within the meaning· of § 241(a)(2)(A)(i) and (ii). *Id.; see also Chiaramonte v. INS,* 626 F.2d 1093, 1097 (2d Cir.1980) (even when "acts technically constituting [theft] could be viewed as entirely free of such a stigma ... an alien convicted of theft cannot demonstrate such mitigation by relitigating the merits of the case before the INS or reviewing courts.").[9]

**7.** Neither the Eleventh Circuit nor Florida courts has defined "moral turpitude" in relation to revocation of citizenship.

**8.** Because the alien was seeking review prior to deportation, the *Okoro* case, of course, presents a very different burden of proof and standard of review than the instant case in which the United States seeks to revoke citizenship that was granted more than seven years ago.

**9.** Defendant swore in his affidavit that he would have filed an action in state court to set aside the petit theft judgments but that "the state court matters have been destroyed pursuant to Florida judicial policy." (Def.'s Aff., attached to Doc. 24, at 2). The fact that Defendant was going to try to set aside the judgments in state court is of no import, for he did· not do so, and unfortunately, the Court cannot consider something that never happened.

■ Because the record shows clearly and convincingly that Defendant was convicted of two crimes involving moral turpitude during the statutory period in which he was required to maintain good moral character, there is no genuine issue of material fact at bar. Defendant lacked good moral character, as that phrase is defined in the rather harsh immigration statute. Indeed, under that statute, two convictions[10]—even for retail theft of a piece of clothing and a pair of sunglasses five years later—render a person as lacking good character and thus ineligible to naturalize. Because Defendant was ineligible to naturalize, he illegally procured his naturalization. This Court is obligated to uphold the laws of the United States, and therefore the Court has no discretion but to grant the United States' Motion on Count I.[11] The Court hopes, however, that the United States or the INS exercises whatever discretion[12] it may have to prevent a subsequent deportation of this 48–year–old, otherwise upstanding, Defendant who has been living and working in the United States for the past 25 years.

**10.** An "adjudication withheld" is considered a conviction for purposes of immigration law. *Chong v. INS,* 890 F.2d 284, 284–85(11th Cir. 1989).

**11.** In light of the Court's decision on Count I, the Court need not reach Count II, regarding naturalization procured by concealment of material fact or by willful misrepresentation.

**12.** INA § 340(a) provides that the United States "shall" institute a revocation proceeding upon an affidavit showing good cause. (*See* Martinez Aff., attached to Compl. as Ex. A). The Court questions, however, whether the INS has consistently filed such an affidavit in similar circumstances, or whether Defendant's Middle Eastern heritage played a part in the United States' decision to seek revocation of his citizenship in light of the tragic events of September 11, 2001.

## IV. Conclusion

It is therefore **ADJUDGED AND ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 15) is **GRANTED.**