PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1663
_____

JOSE JUAN CHAVEZ-ALVAREZ,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Andrew Arthur
(No. A092-167-374)
_____

Argued January 17, 2017

Before: AMBRO, VANASKIE, and SCIRICA, Circuit Judges

(Opinion filed: March 9, 2017)

Craig R. Shagin, Esquire    (Argued)
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA   17101

      Counsel for Petitioner

Benjamin C. Mizer
  Principal Deputy Assistant Attorney General
  Civil Division
Anthony P. Nicastro
  Assistant Director, Office of Immigration Litigation
Sabatino F. Leo, Esquire    (Argued)
Hillel R. Smith, Esquire
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC   20044

      Counsel for Respondent

_____

OPINION  OF  THE  COURT

_____

AMBRO, <u>Circuit Judge</u>

Petitioner Jose Juan Chavez-Alvarez appears before us again, this time challenging a second decision of the Board of Immigration Appeals ("BIA") that he be removed, among other things, for committing sodomy while serving in the United States Army.  In the simplest of terms, the BIA reasoned that the President—through his delegated authority

2

to define punishments for those who commit military crimes—essentially could create the definition of those crimes himself. He cannot, as the latter is a power reserved to Congress. We therefore grant the petition for review and reverse the BIA's decision.

## I. BACKGROUND

Chavez-Alvarez is a citizen of Mexico. He entered the United States without admission or parole but became a lawful permanent resident in 1989. Following the adjustment of his status, he served in the United States Army for over twelve years.

While deployed to South Korea in August 2000, Chavez-Alvarez assaulted an intoxicated female platoon member by penetrating her vagina with his fingers and performing oral sex on her without consent. When questioned about the incident by military officials, Chavez-Alvarez denied the allegations against him on two separate occasions. After formal charges were brought before a court-martial, he entered into a stipulation of fact admitting the assault. The military judge accordingly convicted him of violating three sections of the Uniform Code of Military Justice (the "Code") as enacted at the time of his conviction: Article 107 (10 U.S.C. § 907) for making false official statements when he had earlier denied the allegations against him (two separate violations, one for each statement); Article 125 (10 U.S.C. § 925) for sodomy; and Article 134 (10 U.S.C. § 934) for adultery and indecent assault. He was discharged and confined for 18 months.

Nearly a decade later, Chavez-Alvarez was detained by the Department of Homeland Security and charged as

3

removable because, under § 237, 8 U.S.C. §1227,[1] of the Immigration and Naturalization Act ("INA"), he had been convicted of an aggravated felony with a term of imprisonment of at least one year, *see* 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii), and two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, *see* 8 U.S.C. § 1227(a)(2)(A)(ii). The Immigration Judge ("IJ") found him removable under both provisions of § 237 of the INA, determined he was ineligible for a waiver of inadmissibility under INA § 212(h), and ordered him removed to Mexico. The BIA affirmed the IJ's decision that Chavez-Alvarez was removable under 8 U.S.C. §1227(a)(2)(A)(iii) because he committed the aggravated felony of forcible sodomy after his admission to the United States. It held off determining whether he was also removable under 8 U.S.C. § 1227(a)(2)(A)(ii) (committing two separate crimes involving moral turpitude).

On appeal, we reversed the BIA because it incorrectly determined that Chavez-Alvarez's sodomy conviction resulted in a term of imprisonment of one year or more. *Chavez-Alvarez v. Att'y Gen. U.S.*, 783 F.3d 478 (3d Cir. 2015). Because there was no specific proof in the record "regarding the way in which the sentence was rendered as to each charge" by the military judge, it was impossible to determine whether the apportionment of the sentence as to his aggravated felony conviction was at least one year. *Id.* at 483-84. Accordingly, we remanded to the BIA.

With the case back, it concluded that Chavez-Alvarez was nonetheless removable under the crimes-involving-moral-turpitude provision of the INA. He argued that he was

---

[1] We refer interchangeably to the INA section and that in the U.S. Code.

only convicted of sodomy, a constitutionally protected activity under *Lawrence v. Texas*, 539 U.S. 558 (2003). The BIA disagreed, determining that because Chavez-Alvarez's particular crime was subject to a sentence enhancement because it was committed forcibly, and because the application of the enhancement in his case was the "functional equivalent" of a conviction for the enhanced offense, he was convicted of forcible sodomy. Finding that this was a crime involving moral turpitude, the BIA also determined that his two false-statements convictions were separate crimes of moral turpitude that were not within the same criminal scheme as that of his forcible sodomy conviction. Hence the BIA found him removable, and he petitions us for review.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the BIA's final removal order under INA § 242(a), 8 U.S.C. § 1252(a). Our jurisdiction here is limited to review whether there is a colorable constitutional claim or question of law. *Id.* We review legal questions *de novo*. *Valansi v. Ashcroft*, 278 F.3d 203, 207 (3d Cir. 2002). "When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." *Syblis v. Att'y Gen. of U.S.*, 763 F.3d 348, 352 (3d Cir. 2014) (quotations omitted).

## III. ANALYSIS

On appeal, Chavez-Alvarez contends that his convictions arose from a "single scheme" of criminal misconduct and thus he is not subject to removal. He also asserts that he was convicted of sodomy—not forcible sodomy—and the former is not a crime involving moral turpitude. We address each issue in turn.

5

## A.    The BIA's Interpretation of a "Single Scheme" Is Reasonable

Per 8 U.S.C. § 1227(a)(2)(A)(ii), the Government may remove an alien who is convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," after his admission to the United States. Chavez-Alvarez claims that his two convictions of alleged crimes involving moral turpitude—his sodomy offense and making false statements—stem from the same scheme of criminal misconduct. The rationale is that because only seven hours elapsed between the commissions of the two crimes and there is no evidence that he was not intoxicated throughout that time, Chavez-Alvarez had not yet dissociated himself from his single criminal enterprise when he made false statements following the assault.

The BIA deems a single scheme to exist "where one crime constituted a lesser offense of another, or where the two crimes flow from and are the natural consequence of a single act of criminal misconduct." *Matter of Adetiba*, 20 I. & N. Dec. 506, 509 (BIA 1992). No single scheme exists simply because the acts may be the same, be similar in character, or even because one may closely follow the other. *Id.* At least five other Courts have affirmed this interpretation as reasonable and within the latitude the BIA possesses in interpreting the INA under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., et al.*, 467 U.S. 837 (1984). *See, e.g.*, *Balogun v. INS*, 31 F.3d 8 (1st Cir. 1994); *Akindemowo v. INS*, 61 F.3d 282 (4th Cir. 1995); *Iredia v. INS*, 981 F.2d 847 (5th Cir. 1993); *Abdelqadar v. Gonzales*, 413 F.3d 668 (7th Cir. 2005); *Thanh Huu Nguyen v. INS*, 991 F.2d 621 (10th Cir. 1993); *see also Michel v. INS*, 206 F.3d 253 (2d Cir. 2000) (Cabranes, J., concurring); *Hyacinthe v. U.S. Att'y Gen.*, 215 F. App'x 856 (11th Cir. 2007). All agree there is no clear definition of "single scheme" within the INA.

6

Thus there is a presumption that we defer to the agency's interpretation of that phrase so long as it is reasonable. *See Chevron*, 467 U.S. at 844-45. Indeed, that interpretation need not be the most reasonable. *Iredia*, 981 F.2d at 849. Finding no issue with the BIA's construction of a "single scheme," we join our fellow Courts in concluding that the BIA's interpretation is reasonable.

Here the BIA ruled that, although the two crimes were committed hours apart, there was a substantial interruption of time between them. It determined that making false statements with the intent to deceive was of such a different nature than sodomy that the former did not flow from nor was the natural consequence of the latter. The BIA further noted that neither is a lesser crime of the other. Given the lapse in time, Chavez-Alvarez had the opportunity to reflect on what he had done but chose—on two separate occasions—to make false statements denying his actions. Thus the BIA was correct to affirm the IJ's finding that Chavez-Alvarez's alleged commission of two crimes involving moral turpitude was not from a single scheme of criminal misconduct.

## B. Chavez-Alvarez's Sodomy Conviction

At the heart of this appeal is whether the BIA correctly determined that Chavez-Alvarez's sodomy conviction was one of moral turpitude, thereby making him removable under INA § 237(a)(2)(A)(ii). The BIA concluded that the conviction was for *forcible* sodomy, which is akin to rape and therefore a crime involving moral turpitude. Chavez-Alvarez challenges that ruling, insisting that he only was convicted of "sodomy" under the Code, as "forcible sodomy" appears nowhere in the statute that he violated. (As will be discussed later, this distinction is important to Chavez-Alvarez's

7

removability if "sodomy" is not a crime involving moral turpitude.)

The Government contends that, because the charging document accused Chavez-Alvarez of forcible sodomy (which was proven beyond a reasonable doubt by his stipulation of fact), this was the offense he committed. And, the contention continues, when the crime of sodomy is committed forcibly, Article 125 of the Manual for Courts-Martial (the "Manual") allows the military judge to enhance the punishment imposed. From this the Government asserts that the Manual (which lists various sentence enhancements based on the specific circumstances of sodomy convictions), when read as a complement to the Code, creates divisible crimes—here, consensual sodomy and forcible sodomy. If so, we may look to Chavez-Alvarez's specific conduct to determine which of these divisible crimes he committed, and thus bypass the controlling categorical approach that we would normally use in reviewing his claim. *See Partyka v. Att'y Gen. of U.S.*, 417 F.3d 408, 411 (3d. Cir. 2005). We disagree.[2]

When determining whether a conviction becomes one of moral turpitude for the purposes of removal under the INA, we apply the categorical approach: we "look to the elements of the statutory . . . offense, not to the specific facts [underlying the particular offense], reading the applicable

---

[2] The Government requests that we remand this case to the BIA to determine if the Code and the Manual collectively create separate sodomy offenses, and thus whether the modified categorical approach should apply in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). Because that is a legal question that we resolve, remand is unnecessary, and we deny the Government's motion to remand.

8

statute to ascertain the least culpable conduct necessary to sustain conviction under the statute." *Jean-Louis v. Att'y Gen. of U.S.*, 582 F.3d 462, 465-66 (3d Cir. 2009) (en banc) (quotations omitted); *see also Denis v. Att'y Gen. of U.S.*, 633 F.3d 201, 206 (3d Cir. 2011) (we are prohibited from "consideration of evidence other than the statutory definition of the offense, thus precluding review of the particular facts underlying a conviction." (quotations omitted)).

However, when a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes . . . [, a] sentencing court . . . requires a way of figuring out which of the alternative elements listed . . . was integral to the defendant's conviction." *Mathis*, 136 S. Ct. at 2249. It may in that case "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted . . . ." *Id.* A statute merely sets alternative means of satisfying a necessary element of the crime when it lists "illustrative examples" of that element; on the other hand, a statute creates separate (that is, divisible) crimes when it includes disjunctive elements (for example, a law that criminalizes both lawful and unlawful entry into another's house with intent to steal, and the latter constitutes a more serious crime). *Id.* When a statute lists disjunctive elements, a court may conduct a limited review of the record to determine what conduct formed the basis of the conviction and therefore the crime committed.

Chavez-Alvarez pled guilty to violating the following Code provision as it existed in 2000[3]:

---

[3] The Code was later amended to criminalize only forcible sodomy. 10 U.S.C § 925(a).

9

(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(b) Any person found guilty of sodomy shall be punished as a court-martial may direct.

10 U.S.C § 925 (2000). It did not distinguish between forcible or consensual sodomy. What did distinguish types of sodomy was the Manual—guidelines promulgated by the President to courts-martial on how to impose punishments for various military crimes, including sentence enhancements based on how the crime was committed. It provided that when "the act was done by force and without the consent of the other person," the punishment may include a greater sentence of "[d]ishonorable discharge, forfeiture of all pay and allowances, and confinement for life." Manual (2000 ed.), part IV, ¶ 51(b)(3) & (e)(1)). The Manual thus authorizes a military judge to consider the facts underlying a crime to decide whether to enhance the sentence.

The Government insists that the Manual in conjunction with the Code creates separate sodomy offenses. But can a sentencing consideration under the Manual become an element of the offense under the Code? We think not, for we cannot consider "sentencing factors . . . in lieu of the unambiguous statutory language which speaks only in terms of the conviction." *Roussos v. Menifee*, 122 F.3d 159, 162 (3d Cir. 1997) (citing *Downey v. Crabtree*, 100 F.3d 662, 668 (9th Cir. 1997)). The reason is obvious: sentence-enhancing factors do not define the crime; they affect the punishment of it. Even the United States Army Court of Criminal Appeals interprets its own authorization to impose sentence

enhancements under the Manual in this way. *See United States v. Thomas*, 45 M.J. 661, 664 n.4 (A. Ct. Crim. App. 1997) (regarding the Manual's sodomy sentence enhancements, "these are sentence-increasing circumstances, and not statutory elements . . . "). Thus, under the clear and unambiguous language of the sodomy statute contained in the Code as defined by Congress, Chavez-Alvarez was convicted of sodomy, not forcible sodomy. The BIA's conclusion to the contrary is incorrect.[4]

Here, however, the BIA determined that "for immigration purposes a sentence enhancement can serve as the functional equivalent of an 'element' of an offense" so long as it (the sentencing factor) is proven beyond a reasonable doubt. J.A. at 6. It bases that authority from its own precedent. *See id.* (citing *Matter of Martinez-Zapata*, 24 I. & N. Dec. 424 (BIA 2007)). That reasoning (and line of precedent) cannot stand, as it violates our constitutional doctrine of separation of powers between branches of the

---

[4] Moreover, *Mathis* directs us to use the categorical approach not only because the underlying statute of conviction does not contain various elements that create separate crimes, but also because the INA makes removable an alien who "is *convicted* of two or more crimes" involving moral turpitude. 8 U.S.C. § 1227(a)(2)(A)(ii) (emphasis added). We have explained that in *Mathis* the Supreme Court instructed that the "use of the phrase 'conviction' indicates Congress's intent to apply the categorical approach." *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016) (citing *Mathis*, 136 S. Ct. at 2252). Thus we will not consider the facts underlying Chavez-Alvarez's conviction (that it was committed forcibly) in deciding whether he committed a crime involving moral turpitude.

11

federal government. It is black-letter law that "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Dixon v. United States*, 548 U.S. 1, 7 (2006) (quoting *Liparota v. United States*, 471 U.S. 419, 424 (1985)). This means that "in a criminal case . . . the law must be written by Congress." *United States v. Santos*, 553 U.S. 507, 523 (2008) (citing *United States v. Hudson*, 11 U.S. 32 (1812)); *see also United States v. Christie*, 717 F.3d 1156, 1170 (10th Cir. 2013) ("[T]he Constitution generally assigns the job of specifying federal crimes . . . to the Legislative Branch.").

The takeaway is that the Executive Branch, whether through the President or one of its agencies, cannot create criminal statutes; only Congress can do so. The Manual, created by the President, is used by those in the Executive Branch to sentence military crimes. The BIA, as an Executive Branch arm, determined that it can supplement—in reality, supplant—the Code to create separate, divisible crimes. Not so. The President certainly may define the terms of a punishment for one convicted of a military crime. *Loving v. United States*, 517 U.S. 748, 768 (1996) ("Congress [may] delegate authority to the President to define the aggravating factors that permit imposition of a statutory penalty . . . ."). Yet his authority to do so is cabined by Congress's definition of the relevant "criminal offense . . . within the field covered by the statute." *Id.* (quotation omitted).

The Government persists that the military justice system is unique and separate from our criminal justice system in federal court, and thus the same rules do not apply. No doubt "Congress has created and [the Supreme Court] has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel."

12

*Chappell v. Wallace*, 462 U.S. 296, 303-04 (1983) (citation omitted). But though military personnel are subject to a separate justice system with separate statutory rights and crimes, the Constitution is clear that Congress alone has the power to create that separate statutory regime. *See Weiss v. United States*, 510 U.S. 163, 177 (1994) ("[T]he Constitution contemplates that Congress has plenary control over rights, duties, and responsibilities in the framework of the Military Establishment . . . ." (quotation omitted)); *Schweiker v. Chilicky*, 487 U.S. 412, 422-23, 436 (1988) ("Congress, in the exercise of its plenary constitutional authority over the military, has enacted statutes regulating military life . . . ." (quotation omitted)); *Chappell*, 462 U.S. at 304 (Congress is "the constitutionally authorized source of authority over the military system of justice"). It does so through enactment of the Code. The Manual is not a creature of Congress and thus cannot be used to displace the military justice system that Congress envisioned.

Accordingly, under *Mathis* it is impermissible to use a modified categorical approach to examine the facts warranting the application of a particular sentence-enhancement factor when that factor was not an element of the statute of conviction. Here the use of force in the commission of sodomy was not an element that Congress sought separately to criminalize at the time of Chavez-Alvarez's conviction. Chavez-Alvarez therefore was convicted of sodomy, not forcible sodomy.

## C. The Code Definition of Sodomy Is Not a Crime Involving Moral Turpitude

We now turn to the crime of which Chavez-Alvarez actually was convicted under the Code—sodomy—and whether it is a crime involving moral turpitude. The Supreme Court requires us not to look behind the elements of a crime set out in a nondivisible statute, and here the applicable

13

version of the Code in 2000 did not distinguish between consensual and forcible sodomy (only the Manual did so and, as noted, that sentencing tool cannot add elements to the legislative definition of a crime).  Per *Lawrence v. Texas*, the "crime" in the Code affecting Chavez-Alvarez does not withstand constitutional scrutiny (hence the change to the Code provision long after the charge here).  He was convicted of sodomy, not forcible sodomy, and this cannot serve as a separate crime involving moral turpitude that makes him removable under the INA.

* * * * *

In this context, the statute as written at the time of Chavez-Alvarez's conviction cannot survive as a predicate "crime" that triggers the pertinent removability provision of the INA.  Thus we grant the petition for review and reverse the BIA's holding that Chavez-Alvarez is removable under 8 U.S.C. § 1227(a)(2)(A)(ii).

14